F I L E D

JAN 1 3 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

DEANDRE ANTONIO HOPKINS
Reg. No. 27453-064
FCI Leavenworth
Federal Correctional Institution
Post Office Box 1000
Leavenworth, KS 66048-1000
913-682-8700

DEFENDANT PRO SE

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CR-50-GKF |
| | ) | |
| DEANDRE ANTONIO HOPKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR REDUCTION
## IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant, DEANDRE ANTONIO HOPKINS, pro se, respectfully moves the

Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by § 603(b)(1) of the

First Step Act of 2018, Pub. L. 115-391, Title VI, 132 Stat. 5194, 5239 (Dec. 21,

2018), for an order reducing his sentence because he presents "extraordinary and

compelling reasons" for compassionate release due to his youth, disparity, length of

time served, changes in the law, rehabilitation, unusually harsh prison conditions,

programming, U.S.S.G. §§ 1B1.13(b)(6) AND (b)(5), and serious medical issues

1

which he will never recover as set forth in the separate suggestions filed in support

of this motion.

Respectfully submitted,

*Deandre Hopkins*

Deandre Antonio Hopkins
Defendant pro se

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury a copy of DEFENDANT'S MOTION
FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)
was placed in the United States Mail, first class postage affixed, addressed to:

Clerk
United States District Court
Northern District of Oklahoma
333 West 4th Street, Room 411
Tulsa, OK 74103

and,

United States Attorney
Northern District of Oklahoma
110 West 7th Street, Suite 300
Tulsa, OK 74119

for the purpose of service herein. Executed on this 6th day of January, 2025. 28
U.S.C. § 1746.

*Deandre Hopkins*

Deandre Antonio Hopkins

DEANDRE ANTONIO HOPKINS
Reg. No. 27453-064
FCI Leavenworth
Federal Correctional Institution
Post Office Box 1000
Leavenworth, KS 66048-1000
913-682-8700

DEFENDANT PRO SE

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:12-CR-50-GKF |
| | ) | |
| DEANDRE ANTONIO HOPKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION FOR
## REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

Defendant, DEANDRE ANTONIO HOPKINS, pro se, respectfully submits

suggestions in support of his motion for reduction of sentence pursuant to 18 U.S.C.

§ 3582(c)(1)(A). The defendant seeks an order reducing his sentence because he

presents "extraordinary and compelling reasons" for compassionate release. The

defendant has the following factors which support compassionate release: youth,

length of time served, changes in the law, rehabilitation, U.S.S.G. § 1B1.13(b)(5),

resurgence of COVID, stacking, and serious medical issues from which he will never

recover. The defendant is seeking mercy from the Court in the form of

compassionate release. *United States v. Hansen*, 2020 U.S. Dist. LEXIS 80494, at *7 (N.D. Ill. May 7, 2020) ("Courts promote respect for the law when they exercise mercy in appropriate circumstances.").

## **INTRODUCTION**

> "The essence of compassion is being able to imagine one's self in another's position; the better to become sensitive to the suffering and welfare of others. Compassion incorporates the concepts of mercy, pity, and justice. It is a tempering of how we feel by a rational sense of how we would like to be treated if we were in the same spot."

*First National Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union 338*, 118 F.3d 892, 899 (2nd Cir. 1997). Compassionate is defined as "feeling or showing sympathy and concern for others." While compassionate release is a misnomer, *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020), defendant's requested reduction must be read in this context.

People grow, mature, evolve, and because conditions and circumstances change it is virtually impossible to make sound decisions when first imposing a sentence about precisely how long someone should spend in prison. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for all intent and purposes – final. For the first few years of confinement the defendant had no realistic hope ever being released from prison prior to serving his full term, but he has done everything within his power to rehabilitate himself as demonstrated by the record. *Exhibit* 1.

2

The defendant does not seek to justify, diminish, or detract from the seriousness of his offenses, and he unequivocally accepts responsibility for his conduct. The defendant seeks mercy from the Court in that he is now 34-years old and has been incarcerated since 2012.

The defendant's sentence exceeds the average prison sentence imposed nationally for robbery in 2023. <u>See</u> U.S. Sentencing Commission, *2023 Sourcebook for Federal Sentencing Statistics*, Table 27, https://www.ussc.gov/sites/ default/files/ pdf/research-and-publications/annual-reports-and-sourcebooks/2023/ Table 27.pdf. In 2023, the national average sentence imposed for robbery was 110 mean months imprisonment, and 96 median months respectively. *2023 Sourcebook*, Table 27.

The defendant's sentence exceeds the average prison sentence imposed nationally for firearms in 2023. <u>See</u> U.S. Sentencing Commission, *2023 Sourcebook for Federal Sentencing Statistics*, Table 27, https://www.ussc.gov/sites/default/files/ pdf/research-and-publications/annual-reports-and-sourcebooks/2023/ Table 27.pdf. In 2023, the national average sentence imposed for firearms was 49 mean months imprisonment, and 40 median months respectively. *2023 Sourcebook*, Table 27.

## ADMINISTRATIVE REMEDIES

The defendant has exhausted administrative remedies. On July 2, 2024, the defendant submitted a CR.RIS request to the Warden at the United States Penitentiary at Florence, Colorado. *Exhibit* 2. The Warden did not respond to defendant's request for compassionate release. The text of 18 U.S.C. § 3582(c)(1)(A) plainly provides that a defendant may file a motion on his own behalf 30 days after

the warden receives his request, regardless of whether the defendant exhausted his administrative remedies. Prisoners have two routes to directly petition courts for compassionate release: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt ... of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A).

## PROCEDURAL HISTORY

The defendant is currently confined at the Federal Correctional Institution at Leavenworth, Kansas. On May 28, 2013, the defendant was sentenced for Conspiracy to Obstruct, Delay and Affect Commerce by Robbery in violation of 18 U.S.C. § 1951 (Count 1); Obstruct, Delay and Affect Commerce by Robbery in violation of 18 U.S.C. § 1951 (Count 5); Use, Carry and Brandish Firearms During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) Count 6); Obstruct, Delay and Affect Commerce by Robbery in violation of 18 U.S.C. § 1951 (Count 7); and, Use, Carry, Brandish and Discharge a Firearm During and in Relation to Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (c)(1)(C)(i). (ECF 608). The defendant was sentenced to 544 months imprisonment. He was sentenced to 160 months on Counts One, Five, and Seven, 84 months on Count Six, and 300 months on Count Eight. Counts One, Five, and Seven shall run concurrently, each with the other and with the undischarged term of imprisonment in United States District Court for the Northern District of Oklahoma Case 12-CR-

4

044- 001-CVE. Counts Six and Eight are to be served consecutively to all other Counts. *Id.*

## APPOINT COUNSEL

The defendant respectfully moves the Court to appoint the Federal Public Defender to represent him in the case at bar. The Federal Public Defender will be able to obtain a complete copy of the defendant's medical records from the Federal Bureau of Prisons, as well as other allied records which support this motion. A court may appoint counsel in a compassionate release proceeding. *United States v. Offord,* 2020 U.S. Dist. LEXIS 177286, at *3-4 (C.D. Ill. Sept. 25, 2020) (court appointed counsel to obtain defendant's medical records); *United States v. Kerby,* 2021 U.S. Dist. LEXIS 241690, at *2 (D. Neb. Dec. 17, 2021) (appointed counsel to file a brief in support of a § 3582(c)(1)(A) motion); *United States v. Glynn,* 2022 U.S. Dist. LEXIS 32794, at *2 (S.D. N.Y. Feb. 24, 2022) (Court appointed counsel under the Criminal Justice Act to supplement defendant's motion).

## FIRST COMPASSIONATE RELEASE MOTION

The defendant filed his first compassionate release motion on August 1, 2022. (ECF 926). On September 12, 2022, the Court reduced Count 8 to 180-months, to run consecutively to the 84-month term imposed as to count six and the 160-month sentence imposed as to counts one, five, and seven, for a total reduced sentence of 424 months. The 160-month term imposed as to counts one, five, and seven shall run concurrently with the 144-month sentence imposed in the Northern District of

5

Oklahoma case 12-CR-044-001-CVE; the sentences imposed as to counts six and eight shall run consecutively to the term imposed in case 12-CR-044. (ECF 931).

## SECOND COMPASSIONATE RELEASE MOTION

Numerous courts around the country have granted compassionate release to defendants who filed a second compassionate release motion. *United States v. Sands*, 2024 U.S. Dist. LEXIS 228732, at *1 (D. Kan. Dec. 18, 2024); *United States v. Gray*, 2024 U.S. Dist. LEXIS 227725, at *8 (S.D. Ala. Dec. 17, 2024); *United States v. Mendoza,* 2024 U.S. Dist. LEXIS 219164, at *3-4 (S.D. Ind. Dec. 2, 2024); *United States v. Holton*, 2024 U.S. Dist. LEXIS 214698, at *1-2 (D. Md. Nov. 25, 2024); *United States v. Loris*, 2024 U.S. Dist. LEXIS 201422, at *1 (D. Colo. Nov. 5, 2024).

## OVERVIEW

As Congress legislates to account for changed views on punishment, many individuals are left serving federal sentences far longer than society deems necessary for the same conduct today. The defendant is one of those individuals serving a sentence far longer than society deems necessary.

Everyone has a gift and something to offer to society, people can change, and incarcerated persons who do not pose a danger to public safety, and have paid their debt to society, deserve to have a chance to rejoin their families and communities and become contributing members of society. Examples abound of individuals who despite being incarcerated have managed to grow from whatever mistakes they made, overcome obstacles, and use their unique experiences and gifts to benefit

society. See Charles Koch and Brian Hooks, *Believe in People: Bottom-Up Solutions for a Top- Down World*, 109-116, 205-06, 214-16 (2020); Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 82, 84-88 (2019); Tarra Simmons, *Transcending the Stigma of a Criminal Record: A Proposal to Reform State Bar Character and Fitness Evaluations*, 128 Yale L.J. F. 759 (2019).

Backend sentencing reforms, like the First Step Act, will allow this Court to account for an incarcerated person's efforts at rehabilitation while determining whether a sentence reduction is warranted, are not only sound public policy, but a moral imperative.

After Congress passed the First Step Act, the Sentencing Commission amended U.S.S.G. § 1B1.13 to add two new "extraordinary and compelling" reasons for reducing a sentence, bringing the total to six: "(1) the defendant's medical circumstances, (2) advanced age, (3) family circumstances, (4) whether the defendant is a victim of abuse, (5) 'other reasons,' and (6) whether the defendant received an unusually long sentence." See 18 U.S.C. § 3582(c)(1)(A)(i).

## EXTRAORDINARY AND COMPELLING CHANGE IN THE LAW

### U.S.S.G. § 1B1.13(b)(5)

The defendant is additionally and independently eligible for a sentence reduction under U.S.S.G. § 1B1.13(b)(5). The "catchall provision" "maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release." *United States v. Smith*, 2024 WL 733221, at *2 (D. Md. Feb. 21, 2024). That discretion includes examining

the "totality of [the defendant's] circumstances" which may amount to reasons justifying a reduction in sentence. *Id.* As such, in analyzing this ground for relief, other courts applying U.S.S.G. § 1B1.13(b)(5) have considered whether "the combined weight of [the defendant's] circumstances is 'similar in gravity to those described in paragraphs (1) through (4)'" of § 1B1.13(5)." *United States v. Knapp*, 2023 U.S. Dist. LEXIS 211545, at *4 (D. Mont. Nov. 28, 2023).

Multiple district courts have considered the sheer length of a defendant's sentence irrespective of any changes in the law under U.S.S.G. § 1B1.13(b)(5).

In *United States v. Cirino*, 2024 U.S. Dist. LEXIS 68951, at *9 (D. Nev. Apr. 15, 2024), the court determined that it could not "consider nonretroactive changes to sentencing law as an extraordinary and compelling reason for release under U.S.S.G. § 1B1.13(b)(6)." However, the defendant argued that "his age, medical condition, time already spent in custody, unusually long sentence, rehabilitation, and family support [met] the requirements for release under Section 1B1.13(b)(5)."

In *United States v. Brown*, 715 F. Supp. 3d 1034, 1044 (S.D. Ohio 2024), the court concluded that the defendant was "entitled to a sentence reduction under § 1B1.13(b)(5), even if consideration of the nonretroactive change[s in law] [were] foreclosed" by existing circuit precedent. Under that analysis, see also *United States v. Joseph*, No. 12-cr-60110, ECF No. 99 (S.D. Fla. Feb. 25, 2024) (finding that the defendant qualified under Section 1B1.13(b)(6) and (b)(5) based on defendant's rehabilitation); *United States v. Kayarath*, 2024 U.S. Dist. LEXIS 39674, at *13 (D.

Kan. Mar. 4, 2024) (finding the defendant qualified under Section 1B1.13(b)(5)

based on his "significant rehabilitation").

### U.S.S.G. § 1B1.13(b)(6)

The Sentencing Commission adopted U.S.S.G. § 1B1.13(b)(6) which states the
following:

> **Unusually Long Sentence.**—If a defendant received an unusually
> long sentence and has served at least 10 years of the term of
> imprisonment, a change in the law (other than an amendment to the
> Guidelines Manual that has not been made retroactive) may be
> considered in determining whether the defendant presents an
> extraordinary and compelling reason, but only where such change
> would produce a gross disparity between the sentence being served and
> the sentence likely to be imposed at the time the motion is filed, and
> after full consideration of the defendant's individualized
> circumstances.

Section 1B1.13(b)(6) states that an "unusually long sentence" may be deemed an

"extraordinary and compelling reason" warranting compassionate release, provided

that the defendant has served at least 10 years of their term of incarceration, and a

"gross disparity" between the sentence the defendant received and the sentence his

codefendants received. That provision indisputably covers the defendant. The

change in the law in the First Step Act is that prior to its passage, a court could not

consider disparity amount codefendants. *United States v. Smith*, 2024 U.S. Dist.

LEXIS 30932, at *6 (D. Md. Feb. 21, 2024); *United States v. Eccleston*, 573

F.Supp.3d 1013, 1017 (D. Md. 2021) (agreeing that a disparity between the

sentences of co-defendants can constitute "an extraordinary and compelling

circumstance that justifies a sentence reduction"). *United States v. Payne*, 2022 U.S.

Dist. LEXIS 111098, at *12 (N.D. Okla. June 23, 2022) (disparity in sentences

9

among codefendants), *United States v. Thompson*, 2022 U.S. Dist. LEXIS 28228, at *3 (D. Kan. Feb. 16, 2022). The Court concluded sentence disparity among codefendants warranted a reduction of sentence. *United States v. Seabrook,* 2023 U.S. Dist. LEXIS 30691, at *9 (S.D. N.Y. Feb. 23, 2023). "The enactment of the First Step Act enables me to consider an unreasonable disparity in sentences between co-conspirators as part of the extraordinary and compelling circumstances that justify lowering Seabrook's sentence. See e.g. *United States v. Ramsay*, 538 F. Supp. 3d 407, 428 (S.D. N.Y. 2021) (citing, among other factors, sentencing disparities with codefendants as a basis for a sentence reduction)."

    *United States v. Benjamin*, 2024 U.S. Dist. LEXIS 207511, at *16-17 (D. Md. Nov. 15, 2024). Further, 18 U.S.C. § 3553(a)(6) allows for the comparison of a defendant's sentence to his codefendants' sentences to determine if there are any unwarranted sentence disparities. See *United States v. Graham*, 2022 U.S. App. LEXIS 10732 (4th Cir. Apr. 20, 2022) (per curiam) (vacating district court's order and remanding case for further proceedings, in part, because district court "failed to consider" argument that there existed an unwarranted "sentencing disparity between [the defendant] and his codefendants."); *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021) (finding that the disparities between the defendant's sentence with his codefendants' sentences "support[ed] the conclusion that the § 3553(a) factors support early release . . ."). Benjamin was sentenced to 228 months of incarceration for a conspiracy to distribute drugs in violation of 21 U.S.C. § 846. (ECF Nos. 87; 115.) His codefendants, Darlene Lee ("Lee") and

Marquita Davis ("Davis"), were similarly convicted under § 846, but Lee only received a one-year sentence, and Davis only received a time-served sentence (with supervised release). (ECF 95 *SEALED*; ECF 94; ECF 73.) While it is true Benjamin's circumstances differ from his codefendants' in that he played a leadership role in the conspiracy (ECF 115 at 5), his lengthy sentence incorporates this difference. But even factoring in Benjamin's elevated role, the 18-year difference between his sentence and his codefendants' sentences remains an unwarranted disparity supporting the need for a reduced sentence. Accordingly, the Court finds that, while the relevant § 3553(a) factors do not support Benjamin's immediate release, they do support a reduction in his sentence.

There is a major disparity in the sentences that defendant received, and the sentences imposed nationally for the same offenses.

## DISPARITY

The defendant's co-defendants received the following sentences: Christopher Darnell Lewis was sentenced to 180-months; Marquis Deron Devers was sentenced to 180-months; Duncan Eric Herron was sentenced to 40-months; Dontayne Dejay Tiger was sentenced to 125 months; James Miller was sentenced to 180-months; Kenneth Hopkins was sentenced to 63-months; and Dejuan Leshae Hill was sentenced to 162-months.

## MEDICAL

The Sentencing Commission's policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" can be found at U.S.S.G. §

1B1.13. Section 1B1.13(b) provides: (b) Extraordinary and Compelling Reasons.-- Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof: (1) Medical Circumstances of the Defendant.-- (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

The defendant has been unable to obtain his latest medical records from the medical department at the Leavenworth Federal Correctional Institution, but the Government will be able to obtain these records with one telephone call. The defendant is suffering from medical conditions that require long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death. The BOP is doing nothing other than prescribing medication for defendant's hypertension.

**Hypertension:**

High blood pressure (hypertension) is a common condition in which the long-term force of the blood against your artery walls is high enough that it may eventually cause health problems, such as heart disease.

The defendant suffers from hypertension. Numerous courts have granted compassionate release to defendants who suffer from hypertension. *United States v. Eads*, 2024 U.S. Dist. LEXIS 166639, at *16 (D. Colo. Sept. 16, 2024); *United States v. Mabry*, 2024 U.S. Dist. LEXIS 130732, at *2 (S.D. Ohio July 24, 2024); *United States v. Dawson*, 2024 U.S. Dist. LEXIS 125619, at *25 (D. Md. July 17, 2024);

*United States v. Hopper,* 2024 U.S. Dist. LEXIS 125967, at *8 (D. N.M. July 16, 2024); *United States v. Price,* 2024 U.S. Dist. LEXIS 125248, at *2 (D. Mont. July 16, 2024); *United States v. Hagen,* 2024 U.S. Dist. LEXIS 121352, at *10 (W.D. N.C. July 10, 2024).

**<u>Allergies:</u>**

Allergies are your body's reaction to a foreign protein. Usually, these proteins (allergens) are harmless. However, if you have an allergy to a particular protein, your body's defense system (immune system) overreacts to its presence in your body.

The defendant suffers from allergies. Courts have granted compassionate release to defendants who suffer from allergies. *United States v. Blackbird,* 2024 U.S. Dist. LEXIS 132594, at *7 (D. Mont. July 26, 2024); *United States v. Partin,* 2024 U.S. Dist. LEXIS 19519, at *11 (E.D. Ky. Feb. 5, 2024); *United States v. Mulder,* 2023 U.S. Dist. LEXIS 221525, at *10 (N.D. Okla. Dec. 13, 2023); *United States v. Hickman-Smith,* 2020 U.S. Dist. LEXIS 170995, at *6 (D. Neb. Sept. 18, 2020).

## <u>YOUTH</u>

The defendant was 22-years old when he committed his offenses. Courts have held that the combination of a lengthy sentence, commendable rehabilitative efforts, and a young age at the time of the commission of the offense may constitute an extraordinary and compelling reason for compassionate release. *United States v. King,* 2023 U.S. Dist. LEXIS 196542, at *11-12 (N.D. Calif. Nov. 1, 2023). <u>See</u>

13

<u>United States v. Brooker</u>, 976 F.3d 228, 238 (2d Cir. 2020) ("[The defendant's] age at the time of his crime and the sentencing court's statements about the injustice of his lengthy sentence might perhaps weigh in favor of a sentence reduction."); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("[A] combination of factors warranted relief, including [the defendant's] young age at the time of sentencing"); *United States v. Lopez*, 2020 U.S. Dist. LEXIS 200076, 2020 WL 6298061, at *5 (D. Haw. Oct. 27, 2020) (finding that the defendant's "extraordinary rehabilitation," "youth at the time of his offense," lack of criminal record, and minimal disciplinary history were grounds that merit compassionate release); *United States v. Crutcher*, 2021 U.S. Dist. LEXIS 126230, 2021 WL 2827481, at *6 (N.D. Okla. July 7, 2021) ("Considering [the defendant's] conviction at a relatively young age, receiving what amounted to a life sentence, and his rehabilitation efforts, the Court finds extraordinary and compelling circumstances which form the basis for relief."). Crutcher, in particular, is instructive here. In *Crutcher*, the court found that the defendant presented extraordinary and compelling circumstances because he received a lengthy cumulative sentence at a young age and committed himself to rehabilitative efforts. 2021 WL 2827481, at *6. The defendant, who was twenty-four at the time, pleaded guilty to possessing a firearm in relation to a drug trafficking crime and received a sixty-month federal sentence to run consecutively to any other term of imprisonment. 2021 WL 2827481, at *1. A month after he pleaded guilty in federal court, the defendant was convicted in state court and sentenced to fifty years "for conduct which arose from the same criminal transaction." The court found that

14

his "lengthy" sentence at a "relatively young age" contributed to the determination for extraordinary and compelling circumstances. 2021 WL 2827481, at *5-6. In addition, the court found it significant that the defendant committed himself to rehabilitative efforts while he was incarcerated and maintained relationships with his family, friends, and community. 2021 WL 2827481, at *5.

In *United States v. Ferebe*, 2023 U.S. Dist. LEXIS 185047, at *6-9, 2023 WL 6809707 (D. Md. Oct. 16, 2023), the court held that in the years since Ferebe was sentenced, the U.S. Supreme Court has placed increased importance on the role of youth in sentencing. As the Supreme Court has since explained, "developments in psychology and brain science" have revealed the need to place children and adults in "constitutionally different" categories "for purposes of sentencing" because of the "diminished culpability" and increased "prospects for reform" during the stages of adolescent psychological development. See *Miller v. Alabama*, 567 U.S. 460, 471-72 (2012) (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). Although these constitutional decisions draw "the line at 18 years of age," the Court has also recognized that the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). Adapting to this understanding, courts now "consistently reject life sentences for those who commit crimes, even heinous crimes, in the 'immaturity, irresponsibility, impetuousness, and recklessness' of youth," including in the years after a defendant turns eighteen. See Mem. and Order at 8, *United States v. Linton*, JKB-98-0258 (D. Md. Sept. 27, 2021), ECF 471 (quoting *Miller*, 567 U.S. at 476).

Third, modern sentencing courts in this District "routinely impose sentences within the thirty-year range" for youthful defendants "involved in drug-related killings." See *United States v. Williams*, 2021 U.S. Dist. LEXIS 158818, 2021 WL 3725435, at *3 (D. Md. Aug. 23, 2021) (collecting cases). Sentencing data show that the median sentence for murder in this District is 300 months. For example, in *United States v. Floyd*, this court sentenced to 360 months a defendant who was convicted of conspiring to commit murder in furtherance of a racketeering conspiracy. See *United States v. Barronette*, 46 F.4th 177, 189, 204 (4th Cir. 2022). Similarly, in *United States v. Hunter*, Chief Judge Bredar sentenced to 321 months a defendant who admitted to distributing a mandatory-minimum quantity of drugs and to shooting and killing a rival gang member in a retaliatory strike. See Judgment, *United States v. Hunter*, JKB-16-0363 (D. Md. June 15, 2018), ECF 706; Plea Agreement at 4, *United States v. Hunter*, JKB-16-0363 (D. Md. Oct. 3, 2017), Likewise, in *United States v. Weaver*, Judge Bennett sentenced to 360 months a defendant who pled guilty to the execution-style murder of another drug dealer. See *United States v. Weaver*, RDB-19-0144 (D. Md. Aug. 15, 2022), Sentencing Ferebe in the thirty-year-range would remain consistent with this precedent even as he continues to face a Guideline sentence of life imprisonment today. Indeed, the Guideline ranges for the defendants sentenced in Floyd, Hunter, and Weaver each contemplated life imprisonment. The defendant in Floyd faced, like Ferebe, a Guideline sentence of life, and, like Ferebe, exercised his right to take his case to trial. See *Barronette*, 46 F.4th at 187, 211. Yet after taking all the relevant factors

16

into account, the court imposed a thirty-year sentence notwithstanding the Guideline calculation. See *id.* at 211. On top of this, Ferebe was convicted for crimes committed at a younger age and with a lower criminal history category than any of these similarly situated defendants. For all these reasons, the court concludes that, were Ferebe convicted today, he would likely receive a sentence "within the thirty-year range." See *Williams*, 2021 U.S. Dist. LEXIS 158818, 2021 WL 3725435, at *3. A thirty-year-range sentence represents a "gross disparity" with the life term Ferebe is currently serving. *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723). As Chief Judge Bredar has explained, a "mandatory life sentence, however imposed, constitutes a significant sentencing disparity when considering how the modern criminal justice process" operates on defendants like Ferebe. *See* Mem. and Order at 8, United States v. Linton, JKB-98-0258 (D. Md. Sept. 27, 2021), Accordingly, the disparity between Ferebe's sentence and the sentence he would face today, understood in the context of his particular circumstances and intervening legal developments, creates an extraordinary and compelling circumstance that may warrant a reduced sentence.

## UNUSUALLY HARSH PRISON CONDITIONS

Federal prisons have become unsafe due to severe staff shortages which is a management problem the BOP is not solving. All federal prisons are understaffed which creates an unsafe environment for staff and inmates. Federal prisons are being forced to lock down on a regular basis due to staff shortages, and this completely disrupts all rehabilitation, work programs, and medical services.

17

Lockdowns affect everything from regular bathing to serving sack meals along with the denial of all visitation. Medical services are only available on an emergency basis. Private prisons which housed aliens have been closed by the Biden Administration, therefore, illegal aliens have been moved to the Federal Prison System. Many of these prisoners are from Central America (MS-13) who are very dangerous gang members which contributes to a very unstable and unsafe prison environment.

Numerous lockdowns are created because the BOP is not able to control the flow of illicit drugs entering the institutions, and prisoners are having seizures by ingesting the drugs. See Charles Sigler, *The Open Secret of K2 in Prisons*, Faith Seeking Understanding (July 28, 2017), https://faith-seeking-understanding.org/2017/07/28/the-open-secret-of-k2-in-prisons/[https://perma.cc/6EUL-LBHA]. This is a serious problem throughout the BOP, and the BOP solution is mass punishment by locking the institution down rather than finding the source and punishing the individuals who possess and use the drugs.

## REHABILITATION

The defendant is very remorseful about his past conduct and actions, and he is truly and deeply sorry about his shameful conduct, and apologizes to the Court, to the community, to the families he harmed, and to his family whom he brought disgrace to. The defendant seeks the opportunity to prove to society he is a changed man, and this can only be accomplished if the Court shows mercy and reduces his sentence. *United States v. Kibble*, 992 F.3d 326, 334 (4th Cir. 2021) (Gregory, C.J.)

("I recognize the breadth of 18 U.S.C. § 3582(c)(1)'s text not to discount the seriousness of some criminal offenses, but to give effect to the policy choice that Congress made plain: when extraordinary and compelling circumstances exist, even the most serious offenders may be eligible for mercy."). While confined, the defendant has taken advantage of every rehabilitation program which has been made available to him. *Exhibit* 1.

In *United States v. Aman*, 2024 U.S. Dist. LEXIS 124916, at *30 (S.D. Fla. July 16, 2024), the court found that "[d]efendant qualifies under § 1B1.13(b)(5)'s catchall provision. The Court further finds that Defendant's rehabilitation provides additional support for the Court's conclusion that this situation presents extraordinary and compelling circumstances." U.S.S.G. § 1B1.13(d). The rehabilitation provision is the addition of a new clause that now explicitly allows courts to consider a defendant's rehabilitation while serving a sentence in determining whether and to what extent a sentence reduction is warranted, so long as rehabilitation is considered in combination with "other circumstances."

## 18 U.S.C. § 3553 FACTORS

A review of the § 3553(a) factors, to the extent they apply, weigh in favor of immediate reduction in defendant's sentence (compassionate release), and these factors are to be considered by the Court when it makes its decision in the case at bar. *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1967-68 (2018). In *United States v. Smith*, 2023 U.S. App. LEXIS 30413, at *3 (4th Cir. Nov. 15, 2023), the court stated "[w]hen considering the § 3553(a) factors, the district court "must account not

only for the circumstances at the time of the original offense but also for significant post-sentencing developments," such as the defendant's rehabilitation efforts."

The factors to be considered by the Court when it makes its decision in the case at bar are:

### 1. § 3553(a)(1) – The nature and circumstances of the offense and history and the history and characteristics of the defendant.

Evidence of post-conviction rehabilitation may plainly be relevant to "the history and characteristics of the defendant." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (citing 18 U.S.C. § 3553(a)(1)). A district court cannot artificially limit itself to a defendant's past history and circumstances while ignoring more recent developments. *Id.* at 488-49. In *United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020), the court held "[A] district court may consider evidence of a defendant's post-sentencing rehabilitation when deciding whether to impose a reduced sentence under the First Step Act" (citation omitted). In *United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019), the court stated a court may consider post-sentencing rehabilitation and other 18 U.S.C. § 3553 factors when deciding whether to exercise discretion and reduce sentence under the First Step Act. Under 18 U.S.C. § 3553(a), a court must "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85 (2007).

The defendant will have spiritual support when he is released due to the fact he has returned to the Church for moral guidance. The defendant has sought

religious counselling since being incarcerated in that he had strayed from the Church and lost his moral compass. The defendant has since regained his moral compass.

### 2. § 3553(a)(2)(A) – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

Section 3553(a)(2) considers whether a given sentence complies with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). While the defendant's underlying criminal offense is undeniably serious, his sentence has consumed a large part of his life and by any measure represents a very substantial punishment that reflects the seriousness of his offense and the need for general or specific deterrence. In *United States v. Garcia*, 505 F. Supp. 3d 328, 332 (S.D. N.Y. 2020), the court held that "[t]he Court plainly must consider the risk that Garcia could grow ill or die in custody when assessing the 'kinds of sentence available,' as well as whether a sentence reflects 'just punishment' and whether the sentence will provide Garcia with needed medical care, training, and other correctional treatment."

### 3. § 3553(a)(2)(B) – to afford adequate deterrence to criminal conduct.

The United States Department of Justice ("DOJ") published a paper entitled "*Five Things About Deterrence*," 42 Crim. & Just. 199, 201 (2013). *United States v. Browning*, 2021 U.S. Dist. LEXIS 38058, at *12-13 (E.D. Mich. 2021). In the paper, the DOJ explains that, in terms of both specific and general deterrence, there is

overwhelming evidence in the scientific literature that the certainties of being caught is a vastly more powerful deterrent than the [severity of the] punishment. *Id.* at *12. At this point in the defendant's life, he is well aware he cannot beat the system, and must live a law-abiding life. In *Pepper v. United States*, 562 U.S. 476, 490-91 (2011), the Court held a district court conducting resentencing "may consider evidence of a defendant's rehabilitation since his prior sentencing" as such evidence "may be highly relevant" to 18 U.S.C. §§ 3553(a)(2)(B) and (C). See *United States v. McMannus*, 496 F.3d. 846, 853 (8th Cir. 2007) (Melloy, J., concurring) ("In assessing ... deterrence, protection of the public, and rehabilitation, 18 U.S.C. §§ 3553(a)(2)(B), (C) & (D), there would seem to be no better evidence than a defendant's post incarceration conduct").

### 4.    § 3553(a)(2)(C) – to protect the public from further crimes of the defendant.

The defendant does not pose any type of danger whatsoever to any person or to the community, as he knows the consequences of any type of misbehavior. Therefore, he would never put himself, his family, or the public in jeopardy. The defendant's record while in prison clearly reflects the fact he poses no danger to the community. In *Pepper v. United States*, 562 U.S. 476, 490-91 (2011), the Court held a district court conducting resentencing "may consider evidence of a defendant's rehabilitation since his prior sentencing" as such evidence "may be highly relevant" to 18 U.S.C. §§ 3553(a)(2)(B) and (C).

President Abraham Lincoln once wrote "I have always found that mercy bears richer fruits than strict justice." Speech in Washington, D.C., 1865. The defendant is seeking the same mercy that President Lincoln spoke about.

> **5.**    **§ 3553(a)(2)(D) – to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.**

The defendant has engaged in every rehabilitative program which has been made available to him. *Exhibit* 1. The pandemic has curtailed most programs and training within the Federal Bureau of Prisons due to social distancing, etc. No facility within the BOP has returned to normal. The defendant has taken advantage of every opportunity to engage in educational programming. Medical care is lacking in the BOP due to the virus and cost, but the defendant will be able obtain high quality medical care when he is released. See *United States v. Richardson*, 2020 U.S. Dist. LEXIS 108043, at *12 (E.D. Calif. June 19, 2020) (One of the sentencing factors the Court must also consider, is the "need for sentence imposed . . . to provide the defendant with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D)). In *United States v. Ortega*, 2023 U.S. Dist. LEXIS 57086, at *4-5 (S.D. N.Y. Mar. 31, 2023), the court held "the need to provide medical care in the most effective manner also weighs heavily in favor of allowing [a defendant] to seek medical treatment outside the confines of the BOP." *United States v. Gluzman*, 2020 U.S. Dist. LEXIS 131749, at *60 (S.D.N.Y. July 23, 2020) (granting a motion for compassionate release in part based on the "need . . . to provide the defendant with needed . . . medical care . . . in the most effective manner.").

23

## DANGER TO SOCIETY

Considering defendant's age along with his efforts toward rehabilitation, as well as his good conduct while in prison, it is almost a certainty defendant will never engage in any type of further criminal activity when he is released from prison.

The defendant does not pose any type of threat to any individual or society at large. The impact of twelve plus years of confinement has been one of nightmare proportion.

In *United States v. Daniel*, 2024 U.S. Dist. LEXIS 110543 *10-11 (S.D. Fla. June 24, 2024), the Government contended "[t]he relevant question for the Court is not whether [Defendant] has ever been dangerous, but whether [he] is currently dangerous." The Court agreed.

*United States v. Martin*, 2021 U.S. Dist. LEXIS 139791 *3 (D. Md. July 27, 2021) (finding that a defendant's "crimes of conviction do not alone dictate whether he would be a danger to the community today and whether a reduction in his sentence is appropriate").

In *United States v. Cain*, 2024 U.S. Dist. LEXIS 153717, at *14-15 (W.D. Wash. Aug. 27, 2024), the Court stated whether a defendant was a danger to others or the community at the time of sentencing is a question different from whether a defendant continues to present a danger to the safety of others or the community after the passage years.

## RELEASE PLAN

The defendant will live with his mother, Cheryl Hopkins, 2233 North Rockford Ave., Tulsa, OK 74106. 918-515-0092.

## CONCLUSION

The defendant presents extraordinary and compelling reasons in support of compassionate release as envisioned by the passage of the First Step Act. Granting a reduction in sentence will not undermine the goals of sentencing under 18 U.S.C. § 3553(a) and is consistent with policy statements.

The defendant poses no danger to the community. In the interest of justice, the Court should conclude that it is unnecessarily punitive to keep defendant imprisoned any longer, and he respectfully moves the Court to reduce his sentence to time served, and, if this Court deems it necessary, modify the supervised release term to include home confinement.

Respectfully submitted,

*Deandre Hopkins*

Deandre Antonio Hopkins
Defendant pro se

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury a copy of DEFENDANT'S SUGGESTIONS IN SUPPORT OF MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) was placed in the United States Mail, first class postage affixed, addressed to:

> Clerk
> United States District Court
> Northern District of Oklahoma
> 333 West 4th Street, Room 411
> Tulsa, OK 74103

and,

> United States Attorney
> Northern District of Oklahoma
> 110 West 7th Street, Suite 300
> Tulsa, OK 74119

for the purpose of service herein. Executed on this 6th day of January, 2025. 28 U.S.C. § 1746.

_Deandre Hopkins_

Deandre Antonio Hopkins

26

# EXHIBIT 1



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOPKINS, DEANDRE A  27453-064

SEQUENCE: 01748465
Team Date: 05-07-2024

| | | | |
|---|---|---|---|
| Facility: | FLP FLORENCE HIGH USP | Proj. Rel. Date: | 01-30-2043 |
| Name: | HOPKINS, DEANDRE A | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 27453-064 | DNA Status: | POL04040 / 11-12-2013 |
| Age: | 34 | | |
| Date of Birth: | 01-30-1990 | | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Pending Charges**

Refer to PSI/Records Office for additional information on all Pending/Unknown charges.

**Inmate Photo ID Status**

Full status incomplete - Expiration: null

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLP | CHAPEL | CHAPEL ORDERLY | 08-24-2023 |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FLP | ESL HAS | ENGLISH PROFICIENT | 07-29-2013 |
| FLP | GED EN | ENROLL GED NON-PROMOTABLE | 07-29-2013 |
| FLP | GED SAT | GED PROGRESS SATISFACTORY | 05-05-2014 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FLP | | GED YELLOW 1 MS. TOELLE RM 118 | 04-11-2024 | CURRENT |
| FLP | W | GED CLASS 7:30-9:00 ROOM 118 | 01-18-2024 | 04-11-2024 |
| FLP | W | GED CLASS 7:30-9:00 ROOM 114 | 02-01-2023 | 01-18-2024 |
| FLP | W | GED 9:00 TO 11:00AM ROOM 114 | 03-28-2019 | 02-01-2023 |
| FLP | C | ACE DECIMALS CLASS | 04-01-2020 | 04-08-2020 |
| FLP | C | BEGINNING LEATHER | 08-11-2019 | 10-18-2019 |
| YAP | W | PGED M-F  11:30-1 PM; MARTIN | 10-22-2018 | 12-18-2018 |
| YAP | W | PGED M-F  8-10 AM; MARTIN | 08-01-2018 | 10-22-2018 |
| LEW SMU | W | PGED IN-CELL STUDY/SPECIAL MGT | 09-13-2017 | 06-18-2018 |
| LEW SMU | C | SMU PERSONAL GROWTH II RPP 6 | 11-21-2017 | 01-03-2018 |
| LEW SMU | C | SMU PERSONAL GROWTH I RPP 6 | 09-06-2017 | 11-21-2017 |
| HAZ | C | USP INTRO TO STICK ART PROGRAM | 02-08-2016 | 03-28-2016 |
| POL | W | GED SHU SCHOOL | 03-03-2015 | 03-05-2015 |
| POL | W | PRE GED SHU SCHOOL | 11-05-2014 | 03-03-2015 |
| POL | W | AM GED 7 | 02-28-2014 | 11-05-2014 |
| POL | C | ACE LGL RESCH CLASS | 07-21-2014 | 10-20-2014 |
| POL | C | DRUG EDUCATION | 01-29-2014 | 03-13-2014 |
| POL | W | AM PGED 4 U | 11-05-2013 | 02-28-2014 |
| POL | W | PM PGED 4 U | 08-28-2013 | 11-05-2013 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

**Current Care Assignments**

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 08-01-2013 |
| CARE1-MH | CARE1-MENTAL HEALTH | 08-06-2013 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|---|---|---|



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOPKINS, DEANDRE A  27453-064

**SEQUENCE: 01748465**
**Team Date: 05-07-2024**

| Assignment | Description | Start |
|---|---|---|
| C19-T PEND | COVID-19 TEST-PENDING RESULTS | 04-21-2021 |
| NO PAPER | NO PAPER MEDICAL RECORD | 07-30-2013 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 08-01-2013 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-29-2013 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 03-13-2014 |
| MAT SCREEN | MED ASSIST TRMT SCREEN | 10-27-2022 |
| NR WAIT | NRES DRUG TMT WAITING | 07-26-2021 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|---|

| **FRP Assignment:** | **PART** | **FINANC RESP-PARTICIPATES** | | **Start: 06-20-2023** |
|---|---|---|---|---|
| **Inmate Decision:** | **AGREED** | **$27.34** | **Frequency: MONTHLY** | |
| **Payments past 6 months:** | **$164.04** | | **Obligation Balance: $173,428.64** | |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | ($25.00) | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 3 | ASSMT | $500.00 | $200.00 | IMMEDIATE | EXPIRED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $7,103.00 | $5,951.94 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Faci | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 05-14-2024 | FLP | PAYMENT | INSIDE PMT | $27.34 |
| | 04-12-2024 | FLP | PAYMENT | INSIDE PMT | $27.34 |
| | 03-12-2024 | FLP | PAYMENT | INSIDE PMT | $27.34 |
| | 02-13-2024 | FLP | PAYMENT | INSIDE PMT | $27.34 |
| | 01-12-2024 | FLP | PAYMENT | INSIDE PMT | $27.34 |
| | 12-12-2023 | FLP | PAYMENT | INSIDE PMT | $27.34 |

| 4 | REST FV | $167,476.70 | $167,476.70 | IMMEDIATE | AGREED |
|---|---|---|---|---|---|
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

**FRP Deposits**

Trust Fund Deposits - Past 6 months:  $1,254.05          Payments commensurate ?   Y

New Payment Plan:  ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 11-15-2023 |
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 10-31-2019 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 05-08-2024 |
| N-ANTISO Y | NEED - ANTISOCIAL PEERS YES | 05-08-2024 |
| N-COGNTV Y | NEED - COGNITIONS YES | 05-08-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC Y | NEED - EDUCATION YES | 05-08-2024 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 05-08-2024 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 05-08-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 05-08-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 05-08-2024 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 05-08-2024 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 05-08-2024 |
| N-TRAUMA N | NEED - TRAUMA NO | 05-08-2024 |
| N-WORK Y | NEED - WORK YES | 05-08-2024 |
| R-HI | HIGH RISK RECIDIVISM LEVEL | 05-08-2024 |



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOPKINS, DEANDRE A  27453-064

**SEQUENCE: 01748465**
**Team Date: 05-07-2024**

## Progress since last review

Has maintained clear conduct, has work assignment, has not completed any EDU courses during this review, GED SAT, FRP participating, has SS card, Enrolled in multiple (FSA PTO classes).

## Next Program Review Goals

Prior to next program review is November 2024 complete the following recommendations if eligible/possible to do so:
-Complete any ACE courses of interest (at Least 12-credit hours).

## Long Term Goals

Prior to DEC-2025, complete the following recommendations if eligible/possible to do so:
-Complete wait list courses you enrolled in.

## RRC/HC Placement

No.
Management decision - Will evaluate 17-19 months prior to PRD..
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : Job Search, Transportation, Clothing, DL, Housing, Drug/Alcohol, Medical, Education, Mental Health.
- Offense : See file.
- Prisoner : See file.
- Court Statement : Details are contained in J&C Order, Have been reviewed.
- Sentencing Commission : He was sentenced according to relevant Policy.

Refer to PSI/Records Office for additional information on all Pending/Unknown charges. RRC Will evaluate 17-19m prior to PRD
Individually assessed.

## Comments

24 PTS/Next 338d 6-2024
Next Team 11-2024

Finance/Poverty Need Screen
Is there documentation in the PSR of any of the following?
___ Any history of Bankruptcy
___ No bank account
_X_ No assets nor liabilities noted in PSR
___ Debts noted in Credit Report or other sources
___ Tax Liabilities/back taxes
___ Unpaid alimony/child support
___ other indications of lack of financial management skills (specify)

YES _XX_____ NO _____ (if any of the above, check yes)
If the answer is yes, the inmate has a financial/poverty skills need.

# EXHIBIT 2

1

Date: 7-2-2024
To: USP Florence Warden M. Starr
From: Deandre A. Hopkins
Reg. # 27453-064
Reason: Request for Compassionate release,

I respectfully request you re-commend to the B.O.P legal counsel that I be grant-ed compassionated release, and the B.O.P file a motion with the united states District court for the Northern District of Oklahoma; Case No. 12-cr-50, 12-cr-44, requesting my sentence to be re-duced to time served for the following reasons which are extraordinary and compelling.

1  <u>Medical</u>: The defendant/Applicant has hypertension, and severe allery issues.

2  <u>Change in the Law</u>: The law in regards to the various issues in my case have recently changed and the Sentencing Commission changed the rules in regards to compassionate release U.S.S.G 1B1.13 (b) (Nov. 1, 2023).

2

3 <u>Harsh Conditions</u> : When the Court sentenced me, it didn't anticipate the pandemic and the effects of the pandemic has had on me. There have been consistent lockdowns, being Confined most of the day or all day, limited showers, visits, limited phone calls with my family, lack of recreation, lack of educational resources, lack of access to the law library, and the sanitation Conditions have been deplorable. These conditions have seriously affected my mental health as well as my medical issues. There is a shortage of staff which makes matters worst.

4 <u>Rehabilitation</u> : My institutional record reflect that I took programs that were available to me, and then im on the waiting list for many more. I'm currently enrolled in a Gang awarness program I have maintained a good prison disciplinary record and I report to work in the chapel department each and everyday, without fail, prior to implementation of the lock-down.

5 <u>Covid-19</u> : Since the announcement of the termination of the national emergency, there has been a resurgence of Covid Cases in the United States. There is no cure, and Covid is never going away permanently

3

6 <u>Family Circumstances</u>: My Mother is a single parent thats getting up there in age, with severe asthma that needs my help around the house.

7 <u>Release Plan</u>: If I was released, I would go back to Tulsa, OK and reside with my mother where employment is set up for me with my family and friends who have supported me throughout my incarceration. I would like to start a program on the arts, helping the youth make better choices/decisions.

8 <u>Age</u>: I was 22 years old when First entering into the B.O.P. I've matured beyond measure applying myself daily morning meditations, reading, writing, studying; and is working diligently to attain my G.e.d. I appreciates the seriousness of my offenses, is remorseful; and is adequately deterred from any such ~~further~~ future conduct. I become significantly responsible, as well as has wanted to better myself while imprisoned.

9 <u>Stacking</u>: I have two 924(c) stacking offenses which has been clearly shown to be unconstitutional and illegal by congress themselves in amending the 18 U.S.C § 924(c) statute's stacking/penalty provision, eliminating that penalty after it has been applied for nearly 30 years

4

erroneously, and which was erroneously applied to me
as well, making my sentence significantly beyond that
which I could have legally received otherwise for my
simultaneous multiple firearms convictions.

10  <u>Sentence</u>: I have served 12yrs of my 424month
sentence. As of todays date, the united states sentencing
commission has revised the Guidelines, so as of now the
sentenced that is imposed upon the petitioner is a
<u>unusually long sentence</u>, and a grave sentencing disparity.


Thanks in advance
<u>Blandre ____</u>
Sign

# EXHIBIT 3

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:27453-064, Last Name:HOPKINS

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

Register Number: 27453-064

Inmate Name
   Last.........: HOPKINS
   First........: DEANDRE
   Middle.......: A
   Suffix.......:
Gender.........: MALE

Risk Level Inmate....: R-HI
  General Level......: R-MED (45)
  Violent Level......: R-HI (33)
Security Level Inmate: HIGH
Security Level Facl..: HIGH
Responsible Facility.: FLP
Start Incarceration..: 09/13/2012

**PATTERN Worksheet Details**

Item: Programs Completed, Value: 3

General Score: -6, Violent Score: -2

Risk Item Data

| Category | Assignment | Start | Stop |
|---|---|---|---|
| DRG | ED COMP | 03/13/2014 09:20 | |
| EDC | ACE LEGAL | 07/21/2014 00:01 | 07/21/2014 00:01 |
| EDC | DECIMALS | 04/01/2020 12:54 | 04/01/2020 12:54 |

Item: Work Programs, Value: 0

General Score: 0, Violent Score: 0

Risk Item Data
  No Data

Deandre Hopkins
27453-044
Federal Correction Institution
Post Office Box 1000
Leavenworth, KS 66048

RECEIVED

JAN 13 2025

Heidi D. Campbell, Clark
U.S. DISTRICT COURT

Clerk
United States District Court
333 West 4th Street, Rm 411
Tulsa, OK 74103



EXPECTED DELIVERY DAY: 01/13/25

USPS TRACKING® #

9505 5150 3601 5008 1366 58

EP14W October 2023
OD: 12.5 x 9.5

PS00001036014

RECEIVED

JAN 13 2025

U.S. DISTRICT COURT

RDC 03     0 LB 8.20 Oz     S2324K502056-13

$10.45

JAN 08, 2025

7410?

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail International® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14W © U.S. Postal Service; USDC. All rights reserved.

U.S. POSTAGE PAID
Retail

# UNITED STATES POSTAL SERVICE ®

# PRIORITY® MAIL

■ Expected delivery date specified for domestic use.
■ Domestic shipments include $100 of insurance (restrictions apply).*
■ USPS Tracking® service included for domestic and many international destinations.
■ Limited international insurance.**
■ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the
Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED



PS00001036014

EP14W October 2023
OD: 12.5 x 9.5

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

For international shipments, the maximum weight is 4 lbs.