FILED
NOV 02 2026
Bonnie N. Hackler Acting Clerk
U S DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:12-cr-00050-JDR-3 |
| Plaintiff, | ) | |
| vs. | ) | **MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AND FIRST STEP ACT OF 2018** |
| DEANDRE ANTONIO HOPKINS, | ) | |
| Defendant. | ) | |

COMES Defendant, DEANDRE ANTONIO HOPKINS ("Hopkins"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. JURISDICTION

The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582. The scope of a proceeding under 18 U.S.C. § 3582(c)(2) in cases like this one is extremely limited. *Dillon v. United States*, 130 S.Ct. 2683, 2687(2010). It is black-letter law that a federal court generally "may not modify a term of imprisonment once it has been imposed." *Id.* However, Congress has allowed an exception to that rule "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by

✓ Mail ___ No Cert Svc ___ No Orig Sign
___ C/J ___ C/MJ ___ C/Ret'd ___ No Env
___ Cpys ✓ No Env/Cpys ___ O/J ___ O/MJ

the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see also, *Freeman v. United States*, 131 S.Ct. 2685 (2011) (reciting standard for sentence modifications). Such defendants are entitled to move for retroactive modification of their sentences. *Dillon*, 130 S.Ct. at 2690–91.

## II. STATEMENT OF THE CASE

### A. Procedural Background

On July 11, 2012, a grand jury sitting in the United States District Court for the Northern District of Oklahoma, Tulsa Division, returned a ten (10) count First Superseding Indictment charging Hopkins and seven other co-defendants. See Doc. 96.[1] Count 1s charged Hopkins with Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. *Id.* Counts 5s and 7s charged Hopkins with Robbery, in violation of 18 U.S.C.§ 1951. *Id.* Count 6s charged Hopkins with Using, Carrying, and Brandishing Firearms During and In Relation to A Crime of Violence, Aiding and Abetting, in violation of 18 U.S.C.§ 924(c)(1)(A)(ii). *Id.* Count 7s charged Hopkins with Using, Carrying, and Brandishing Firearms During and In Relation to A Crime of Violence, Aiding and Abetting, in violation of 18 U.S.C.§§ 924(c)(1)(A)(ii) and 2. *Id.*

---

[1] "Doc." refers to the Docket Report in the United States District Court for the Northern District of Oklahoma, Tulsa Division, in Criminal No. 4:12-cr-00050-JDR-3, which is immediately followed by the Docket Entry Number.

On January 23, 2013, a 10-day jury trial commenced. See Docs. 482, 486, 488, 500, 501, 505, 506, 511, 513, 514.

On February 15, 2013, Hopkins was found guilty on counts 1s, 5s through 8s of the First Superseding Indictment. See Doc. 518.

On May 28, 2013, Hopkins was sentenced to a total term of 544 months' imprisonment, 5 years of Supervised Release, $167,476.70 restitution, and a Mandatory Special Assessment Fee of $500. See Docs. 598, 608.

On June 10, 2013, Hopkins timely filed a Notice of Appeal. See Doc. 614.

On May 22, 2015, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") affirmed the District Court's decision. See Docs. 710, 712.

On June 23, 2016, Hopkins filed a Motion for Reduction of Sentence pursuant to the *Johnson* decision. See Doc. 742.

On October 20, 2016, Hopkins filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 764.

On July 27, 2017, the District Court denied his § 2255 Motion and a certificate of appealability. See Docs. 801, 802.

On April 23, 2020, Hopkins filed a petition in the Tenth Circuit seeking permission to file a Second Or Successive § 2255 Motion, which was granted on May

27, 2020. See Docs. 849.

On April 24, 2020, Hopkins filed a Second Or Successive § 2255 Motion. See Doc. 850.

On July 20, 2020, the District Court dismissed Hopkins' Second Or Successive § 2255 Motion and, alternatively, denied the motion on the merits; the court also denied a certificate of appealability. See Docs. 865, 866.

On August 3, 2020, Hopkins filed a Motion to Reconsider the denial of his Second Or Successive § 2255 Motion, which the district court denied on August 11, 2020. See Docs. 869, 872.

On September 8, 2020, Hopkins filed a second Notice of Appeal concerning the judgment and rulings on his Second Or Successive § 2255 proceeding. See Doc. 876. On July 8, 2022, the Court of Appeals dismissed the appeal. See Doc. 923.

On August 1, 2022, Hopkins filed a Motion for Reduction of Sentence pursuant to 18 U.S.C. § 3582. See Doc. 926.

On September 12, 2022, the district court granted the motion and amended, modified, and reduced Hopkins' sentence. See Doc. 931.

On October 11, 2022, Hopkins filed a Notice of Appeal re: Order reducing his sentence. See Doc. 933. On August 4, 2023, the Court of Appeals affirmed the District Court's decision. See Docs. 946, 947.

On January 13, 2025, Hopkins filed another Motion for Reduction of Sentence, which was denied on April 23, 2025. See Docs. 963, 968.

## B. Statement of the Facts

### 1. Offense Conduct

Following a series of robberies in Tulsa, the local police began to suspect that the robberies were connected. They developed a list of suspects, which included Hopkins. The police were interested specifically in seven robberies that took place from August 2009 to November 2011: (1) IBC Bank; (2) Dooley's Pharmacy; (3) T. Roy Barnes Pharmacy ("Barnes Pharmacy"); (4) Metro Pharmacy and Medical Supplies ("Metro Pharmacy"); (5) CVS Pharmacy; (6) Tulsa Municipal Employees Federal Credit Union ("Tulsa Credit Union"); and (7) Arvest Bank. They came to believe that these robberies had been committed as part of a larger conspiracy by members of the Hoover Crips, a Tulsa street gang.

A. Barnes Pharmacy. In May 2010, four armed men wearing hoodies, cut-off shirtsleeves wrapped around their faces, and gloves robbed the Barnes Pharmacy. The robbers arrived in a stolen car, took drugs and cash, and stole the pharmacist's car for the getaway. The car was later found abandoned nearby, with a bag containing the face coverings. Hopkins' DNA was on one of the face coverings left in the car.

B. Metro Pharmacy. This robbery occurred in August 2011. Duncan Herron, the government's cooperating witness, who had been a part of the larger conspiracy at one time but had made a deal with the government, testified at trial to having participated in the Metro Pharmacy robbery, and he named Christopher Lewis, Marquis Devers, and Vernon Hill as coconspirators. He also later named Dontayne Tiger and Hopkins as coconspirators.

Herron admitted to meeting with the group to plan the Metro

Pharmacy robbery on August 13, 2011. Later that day, the group carried out its plan. Herron walked into the pharmacy to buy some medicine, texted Devers as he was leaving, and held open the door for Lewis and Devers (because customers had to be buzzed into the pharmacy). Hopkins had given Herron $10 to buy the medicine. Lewis, Vernon, and Devers then robbed the pharmacy with guns. Herron testified that both Tiger and Hopkins were lookouts during the Metro Pharmacy robbery. After the robbery, the men got into a van that was parked outside of the pharmacy and drove away. As instructed by Tiger, Herron called 911 to report the robbery after the other men drove away, attempting to divert police attention from his involvement.

Included within the evidence admitted at trial were cell phone records establishing that Devers had called Metro Pharmacy twice before the robbery, that Devers and Herron had communicated by text message during the robbery, and that Lewis and Vernon communicated by cell phone during the robbery.

C. Tulsa Credit Union. In September 2011, a group of assailants robbed the Tulsa Credit Union. Herron testified at trial that he, Tiger, Hopkins, Lewis, James Miller, and Devers participated in this robbery. Devers and Hopkins picked up Herron and drove to an apartment to plan the robbery, where the others were already waiting. After this meeting, Herron, Devers, Miller, and Hopkins drove to an apartment complex, where they stole a Jeep to use in the robbery. Hopkins and Tiger then drove the group to the bank in separate cars. Miller, Devers, and Lewis robbed the bank, wearing hoodies, face coverings, and gloves, and carrying guns. One of them fired a gun. The robbers demanded money from multiple tellers, and one teller gave them $170,000 from the vault. Witnesses saw the robbers drive away in the stolen Jeep. Lewis, Devers, and Miller got into the Jeep parked outside the credit union, and Herron drove the stolen Jeep around the corner. Once around the corner, Herron, Miller, and Devers got into a car with Hopkins. Lewis got into a separate car with Tiger. They left the Jeep there and all drove to Miller's sister's house, and police

> recovered the Jeep later that day. The group, including Hopkins, then divided the money between themselves. Herron received $7,000 for his role in the robbery.

See Doc. 710 at 4-7.

2. Trial Proceeding

On January 23, 2013, a 10-day jury trial commenced before Judge James H. Payne. See Doc. 482. Hopkins was tried jointly with Vernon Hill and Dejuan Hill. The Government presented evidence concerning a series of Tulsa robberies and alleged that the defendants were part of a broader conspiracy. During the trial, cooperating witness Duncan Herron testified regarding Hopkins' involvement in the Metro Pharmacy and Tulsa Credit Union robberies. The Government also presented evidence connecting Hopkins to the Barnes Pharmacy robbery, including DNA found on a face covering recovered from an abandoned vehicle. Evidence concerning Hopkins's alleged Hoover Crips affiliation was also introduced to support the Government's conspiracy theory.

After the Government rested, Hopkins moved for a judgment of acquittal under Rule 29, arguing that the Government had failed to establish the required interdependence for the charged conspiracy. The district court denied the motion. The jury subsequently found Hopkins guilty on all five charges submitted against him on February 15, 2013. See Doc. 518.

3. Sentencing and Resentencing Proceedings

On May 28, 2013, a Sentencing Hearing was held before Judge James H. Payne. See Doc. 598. The court sentenced Hopkins to a total term of 544 months of imprisonment. See Doc. 608. The sentence consisted of 160 months on each of Counts 1s, 5s, and 7s, to run concurrently and with the undischarged term of imprisonment imposed in United States District Court for the Northern District of Oklahoma, Case No. 12-CR-044-001-CVE; 84 months on Count 6s, and 300 months on Count 8s, to run consecutively to all other counts. *Id.* It is followed by a total term of 5-year Supervised Release *Id.*The Court also ordered payment of $167,476.70 restitution and a Mandatory Special Assessment Fee of $500. *Id.* Hopkins timely filed a Notice of Appeal. See Doc. 614.

On September 12, 2022, the District Court granted the motion and reduced his sentence to 424 months, resulting in a 120-month (10-year) reduction. See Doc. 931. The reduction primarily resulted from the court's finding of an extraordinary and compelling sentencing disparity created by the First Step Act's elimination of § 924(c) stacking. Specifically, the court reduced Count 8s from 300 months to 180 months, while leaving the 160-month concurrent terms on Counts 1s, 5s, and 7s and the 84-month consecutive term on Count 6s unchanged. *Id.*

4. Appellate Proceeding

On June 10, 2013, Hopkins appealed his convictions to the Tenth Circuit. *Id.* On May 22, 2015, the Tenth Circuit affirmed all of his convictions. See Doc. 710. On appeal, Hopkins argued that the Government had presented insufficient evidence to establish the single, global conspiracy charged in Count 1s, resulting in a prejudicial variance between the indictment and the trial evidence. He also challenged the admission of gang-affiliation evidence, raised a Double Jeopardy claim, and argued cumulative error. The Tenth Circuit agreed that the evidence did not establish the charged global conspiracy but found sufficient evidence of three smaller conspiracies involving the Barnes Pharmacy, Metro Pharmacy, and Tulsa Credit Union robberies. The court concluded that the variance was not substantially prejudicial and rejected his remaining claims. *Id.*

5. <u>Postconviction Proceeding</u>

On October 20, 2016, Hopkins filed a § 2255 Motion, raising 21 claims, including challenges based on *Johnson* and *Mathis*, the sufficiency of the evidence, jury instructions, prosecutorial misconduct, jury selection, ineffective assistance of trial and appellate counsel, plea negotiations, the admission of gang evidence, the indictment, and alleged constitutional violations. See Doc. 764.

On December 27, 2016, Hopkins filed a supplemental motion raising three additional grounds, including ineffective assistance for failing to challenge the §

924(c) firearm convictions, a *Johnson* challenge to Counts 6s and 8s, and ineffective assistance of appellate counsel for failing to raise *Rosemond*. On July 27, 2017, the district court denied the § 2255 motion and declined to issue a certificate of appealability. The court found that most of Hopkins' claims were conclusory and lacked supporting factual allegations. It also rejected his *Johnson* and *Rosemond*-related claims, concluding that the firearm convictions remained valid and that his appellate counsel was not constitutionally ineffective. See Doc. 801.

## III. DISCUSSION

As a preliminary matter, Hopkins respectfully requests that this Court be mindful that courts have a duty to construe *pro se* motions liberally. See *U.S. v. Hernandez*, 627 F.3d 1331 (10th Cir. 2010); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Hopkins recognizes that compassionate release under 18 U.S.C. § 3582(c)(1)(A) is limited. It is not a substitute for a direct appeal, a motion under 28 U.S.C. § 2255, or a vehicle for relitigating the validity of a conviction or sentence. The Supreme Court's recent decisions in *Rutherford v. United States* and *Fernandez v. United States* make that point clear. *Rutherford* holds that a nonretroactive change in sentencing law cannot, by itself or in combination with other factors, supply the extraordinary and compelling reason required by § 3582(c)(1)(A). *Fernandez*

likewise confirms that compassionate release cannot be used to attack the validity of the conviction itself.

Hopkins therefore does not ask this Court to use compassionate release as a substitute for *habeas corpus*, nor does he ask the Court to declare his conviction invalid or to grant relief solely because later legal developments may have changed the way some sentencing issues are analyzed today. Instead, Hopkins seeks relief based on the individualized, present-day circumstances that remain fully cognizable after *Rutherford* and *Fernandez*: the risks created by continued imprisonment, his sustained rehabilitation, his institutional conduct, his reduced danger to the community, and the fact that continued incarceration is no longer necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

Compassionate release remains available where a defendant demonstrates extraordinary and compelling personal circumstances and where the § 3553(a) factors support a reduction. That is the case here. Hopkins has served a substantial portion of a serious sentence. He has matured, completed meaningful programming, maintained institutional employment, addressed substance-abuse issues, and demonstrated that he is no longer the same person who stood before this Court in 2012. His institutional record, when considered together with his rehabilitation, and years already served, further support the conclusion that extraordinary and compelling

circumstances exist. Viewed together, these circumstances present the type of individualized case for mercy that § 3582(c)(1)(A) still permits.

Moreover, under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, an inmate may file a motion for compassionate release after first submitting a request to the Warden of his institution and either (1) fully exhausting all administrative rights to appeal the Bureau of Prisons' denial of that request, or (2) waiting thirty (30) days from the Warden's receipt of the request, whichever occurs first. See First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).

On July 10, 2026, Hopkins submitted a request for compassionate release to Johnston, Warden of FCI Leavenworth. See Exhibit 1. Although the Bureau of Prisons has not responded to his request, more than thirty (30) days have elapsed since the Warden received it. Accordingly, Hopkins has satisfied the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and this Court has authority to consider the merits of his motion.

### A. Legal Standard After *Rutherford* and *Fernandez*

Section 3582(c)(1)(A) authorizes a district court to reduce a previously imposed sentence where, after considering the applicable factors under 18 U.S.C. § 3553(a), the court finds that extraordinary and compelling reasons warrant a reduction

and that any reduction is consistent with applicable policy statements issued by the United States Sentencing Commission.

The Supreme Court has now clarified the limits of that authority. In *Rutherford*, the Court held that a sentencing disparity created by a nonretroactive change in law cannot itself constitute an extraordinary and compelling reason for compassionate release. The Court reasoned that when Congress changes a sentencing law but chooses not to make that change retroactive, courts may not use compassionate release to override that congressional decision.

*Fernandez* similarly confirms that compassionate release cannot be used to challenge the validity of a conviction. Claims of innocence, trial error, or legal invalidity generally belong in direct appeal or *habeas* proceedings, not in a motion under § 3582(c)(1)(A).

Those limitations do not defeat Hopkins' motion. Hopkins' request is not based on an effort to relitigate guilt or to obtain retroactive application of a new sentencing rule. His request is based on who he is today, what has changed during his incarceration, his demonstrated rehabilitation, and whether continued incarceration remains necessary under § 3553(a).

That distinction matters. *Rutherford* and *Fernandez* narrowed the legal-error and nonretroactivity theories of compassionate release, but they did not eliminate

compassionate release based on changed personal circumstances, medical hardship, rehabilitation combined with other factors, family circumstances, institutional record, reduced risk, or the totality of a defendant's present condition. Hopkins's motion should be evaluated under that individualized framework.

The Court's consideration of Hopkins' motion is also consistent with Tenth Circuit precedent interpreting the compassionate-release statute and the Sentencing Commission's policy statement. InUnited States v. Maumau, 993 F.3d 821, 836–37 (10th Cir. 2021), the Tenth Circuit held that, following the First Step Act, the version of U.S.S.G. § 1B1.13 then in effect was not an applicable policy statement governing defendant-filed motions under 18 U.S.C. § 3582(c)(1)(A). The court recognized that district courts have discretion to determine whether extraordinary and compelling reasons warrant a sentence reduction, subject to the statutory requirements of § 3582(c)(1)(A) and consideration of the factors set forth in 18 U.S.C. § 3553(a). See also *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021) (holding that the then-existing version of § 1B1.13 applied only to motions filed by the Director of the Bureau of Prisons and did not constrain district courts considering defendant-filed motions).

Since *Maumau* and *McGee* were decided, however, the Sentencing Commission has substantially amended U.S.S.G. § 1B1.13, effective November 1,

2023. The amended policy statement expressly applies to defendant-filed motions and expands the circumstances that may constitute extraordinary and compelling reasons, including certain changes in law and unusually long sentences, while providing a framework for evaluating such motions. Thus, although the amended policy statement now provides applicable guidance for defendant-filed motions, the Tenth Circuit's recognition in *Maumau* and *McGee* of the district court's authority to conduct an individualized assessment remains relevant to the Court's analysis. Ultimately, the Court must determine whether the circumstances presented constitute extraordinary and compelling reasons and whether a sentence reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a).

Hopkins' request is fully consistent with the amended policy statement. He does not seek relief based upon a nonretroactive change in law, nor does he attempt to use compassionate release as a substitute for collateral review. Rather, Hopkins relies upon the types of individualized circumstances that remain cognizable under both the amended § 1B1.13 and the Supreme Court's recent decisions in *Rutherford* and *Fernandez*, including his sustained rehabilitation, institutional record, reduced danger to the community, viable release plan, and the totality of his present circumstances. Accordingly, granting relief in this case would be entirely consistent with both *Maumau* and *McGee* and the Sentencing Commission's current policy

statement.

**B. Hopkins' Rehabilitation, Institutional Record, and Present Circumstances Establish Extraordinary and Compelling Reasons for Relief**

Hopkins' present circumstances are substantially different from those existing at the time of his conviction and sentencing. Hopkins was on his early twenties when he committed the offenses and has now spent more than a decade in federal custody. During that time, he has demonstrated sustained rehabilitation, meaningful institutional adjustment, educational progress, and a commitment to constructive programming. His institutional record reflects not merely a short period of compliance, but a sustained transformation over many years. These circumstances, considered together and in light of Hopkins' present character and conduct, provide a substantial basis for finding extraordinary and compelling reasons warranting a reduction under 18 U.S.C. § 3582(c)(1)(A).

The Tenth Circuit recognizes that compassionate release requires an individualized assessment of the circumstances presented by the particular defendant. In *United States v. Maumau*, 993 F.3d 821, 831, 837 (10th Cir. 2021), the court recognized the discretion afforded district courts following the First Step Act to determine whether extraordinary and compelling reasons warrant a sentence reduction. Similarly, in *United States v. McGee*, 992 F.3d 1035, 1043, 1050 (10th Cir.

2021), the Tenth Circuit confirmed that district courts have discretion to determine whether extraordinary and compelling reasons exist in defendant-filed motions. The inquiry therefore permits the Court to consider Hopkins' individual circumstances and the totality of developments that have occurred during his lengthy incarceration.

Hopkins' rehabilitation is particularly compelling because it is supported by objective evidence in the institutional record and has already been recognized by the sentencing court. See Exhibit 2. When the Court previously considered Hopkins' request for compassionate release in 2022, it expressly took into account his institutional adjustment, including the absence of evidence that he had engaged in gang activity while imprisoned, his disciplinary record, his enrollment in English-proficiency classes, his satisfactory progress toward obtaining his GED, and his completion of an additional 604 hours of institutional programming. The Court ultimately found that the totality of the circumstances warranted a reduced sentence and determined that the resulting sentence remained sufficient to satisfy the purposes of sentencing.

Most significantly, Hopkins' institutional record demonstrates that his rehabilitation has been sustained over time. *Id.* The record before the Court reflects that Hopkins has been misconduct-free since March 7, 2017. Although his BOP record reflects three infractions between July 2014 and March 6, 2017, those

incidents were followed by a prolonged period without further misconduct. Thus, for years following his last disciplinary infraction, Hopkins has maintained institutional compliance. *Id.* This extended period of positive conduct provides objective evidence of behavioral change and distinguishes his present circumstances from the conduct underlying his original incarceration.

Hopkins has also demonstrated a commitment to education and self-improvement. *Id.* The sentencing court specifically recognized his enrollment in English-proficiency classes, satisfactory progress toward his GED, and completion of 604 additional hours of institutional programming. *Id.* These efforts demonstrate that Hopkins has used his lengthy period of incarceration to develop educational skills and participate in programs designed to promote personal development and successful reintegration. His progress is therefore supported by concrete accomplishments rather than merely generalized claims of rehabilitation.

The absence of evidence that Hopkins has engaged in gang activity while incarcerated is also significant in evaluating his present circumstances. The Government's case at trial involved allegations concerning gang affiliation and a broader conspiracy, but the subsequent institutional record provides evidence of Hopkins' conduct during his years of imprisonment. The sentencing court specifically noted that there was no evidence that Hopkins had engaged in gang activity while

incarcerated. His institutional behavior therefore demonstrates that he has maintained distance from the conduct and associations that formed part of the circumstances surrounding his original prosecution.

Furthermore, Hopkins' age at the time of the offenses provides additional context for evaluating his present circumstances. He was only on his early twenties when the underlying offenses occurred. The sentencing court previously recognized Hopkins' relative youth as part of the circumstances supporting its finding of extraordinary and compelling reasons. More than a decade of incarceration has since passed, during which Hopkins has matured into adulthood while demonstrating sustained institutional compliance and rehabilitation. The Court is therefore evaluating a defendant whose present circumstances cannot fairly be understood solely by reference to the conduct and characteristics of a young defendant more than a decade ago.

The cumulative nature of Hopkins' rehabilitation is particularly important. His institutional adjustment, prolonged misconduct-free period, educational efforts, extensive programming, and absence of gang activity are not isolated developments. Together, they demonstrate a sustained pattern of positive behavior over an extended period of incarceration. The 2022 sentencing order confirms that the Court previously considered these very circumstances relevant to the compassionate-release inquiry

and, after weighing them against the seriousness of the offenses and the other § 3553(a) considerations, determined that a reduced sentence was warranted.

Hopkins' present circumstances therefore provide a materially different picture from the one presented at his original sentencing. The record now reflects an individual who has spent many years in federal custody, maintained a lengthy period free of disciplinary misconduct, pursued educational opportunities, completed substantial institutional programming, and demonstrated positive institutional adjustment. *Id.* These developments are precisely the type of individualized circumstances that the compassionate-release framework permits the Court to consider. See *Maumau*, 993 F.3d at 831–37; McGee, 992 F.3d at 1043, 1050.

Importantly, Hopkins does not ask the Court to disregard the seriousness of his offenses. Rather, he asks the Court to consider the substantial changes that have occurred during his lengthy incarceration and to evaluate whether continued imprisonment for the remainder of his sentence remains necessary in light of his present circumstances. The sentencing court previously determined that a reduced sentence could adequately account for the seriousness of his offenses and satisfy the purposes of sentencing. Hopkins' continued rehabilitation and institutional stability provide further evidence relevant to that individualized assessment.

Accordingly, when Hopkins' sustained rehabilitation, institutional record,

educational achievements, extensive programming, prolonged period without disciplinary misconduct, absence of gang activity while incarcerated, young age at the time of the offenses, and materially changed present circumstances are considered together, the record presents a compelling combination of individualized circumstances for purposes of § 3582(c)(1)(A). Under the Tenth Circuit's framework, these circumstances should be considered collectively rather than viewed in isolation. See *Maumau*, 993 F.3d at 831; *McGee*, 992 F.3d at 1050. The totality of Hopkins' circumstances therefore provides a substantial basis for the Court to find extraordinary and compelling reasons warranting further consideration of a sentence reduction, subject to the Court's separate assessment of the § 3553(a) factors.

### C. Hopkins' Sentencing History and Subsequent Developments Support Relief Under the § 3553(a) Factors

Hopkins recognizes that compassionate release is not a substitute for direct appeal or collateral review. Accordingly, he does not ask this Court to invalidate his conviction, vacate his sentence, or resolve any legal claim that properly belongs in a proceeding under 28 U.S.C. § 2255. Nor does he contend that subsequent legal developments, standing alone, constitute an extraordinary and compelling reason for relief. *Rutherford* forecloses that argument.

Nevertheless, the Court is not required to ignore the broader context of

Hopkins's sentence when evaluating the factors set forth in 18 U.S.C. § 3553(a). The Supreme Court has repeatedly recognized that sentencing is an individualized process and that courts may consider a wide range of information when exercising sentencing discretion. See *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). Thus, while Hopkins does not rely upon legal developments as an independent basis for compassionate release, the Court may consider the circumstances surrounding his sentence as part of the overall determination of whether continued incarceration remains necessary to accomplish the purposes of sentencing.

1. Hopkins' Stacked § 924(c) Sentence No Longer Reflects the Purposes of Sentencing

Section 403 of the Act eliminates the so-called "stacking" of 18 U.S.C. § 924(c)(1)(A) penalties. Section 924(c) provides for various mandatory consecutive penalties for the possession, use, or discharge of a firearm during the commission of a felony violent or drug offense. However, for a "second or subsequent conviction" of 924(c), the mandatory consecutive penalty increases to 25 years.

Occasionally, the Government charges a defendant with multiple counts of 924(c), which results in each count being sentenced consecutive to each other as well as to the underlying predicate offense. For example, a defendant is charged with two counts of drug trafficking and two counts of 18 U.S.C. § 924(c)(1)(A)(i), which

requires a consecutive 5 years' imprisonment to the underlying offense for mere possession of a firearm during the commission of the drug offense. At sentencing, the Court imposes 40 months for the drug trafficking offenses. As a result of the first § 924(c)(1)(A)(i) conviction, the Court must impose a consecutive 60 months (5 years). But what about the second § 924(c)(1)(A)(i) conviction? In such situations, courts have been treating the second count as a "second or subsequent conviction." As such, the 60-month consecutive sentence becomes a 300 month (25 years) consecutive sentence. In our hypothetical, then, the sentencing court would impose a total sentence of 400 months (40+60+300) inasmuch as the second 924(c) count was a "second or subsequent conviction."

Now, under the Act, to avoid such an absurd and draconian result, Congress has clarified that the 25-year mandatory consecutive penalty only applies "after a prior conviction under this subsection has become final." Thus, the enhanced mandatory consecutive penalty no longer can be applied to multiple counts of 924(c) violations.

In other words, The First Step Act revised section 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under section 924(c) is triggered only if the defendant has a prior section 924(c) conviction that has become final. In other words, the extreme 25-year recidivism enhancement of 924(c)

is now to apply only to actual recidivists.

**Example:** Contemplates five-year mandatory minimum terms for using, carrying, or possessing a firearm in furtherance of a crime of violence or drug trafficking offense. Higher mandatory minimums apply depending on other factors such as whether the firearm was brandished (seven years) and whether the firearm was a machine gun (30 years) among others.

| 924(c) Counts of Conviction in the Same Indictment | BEFORE the First Step Act | AFTER the First Step Act |
|---|---|---|
| 1 Count | Mandatory minimum of 5 year | Mandatory minimum of 5 years |
| 2 Counts | Mandatory minimum of 5 + 25 = 30 years | Mandatory minimum of 5 + 5 = 10 years |
| 3 Counts | Mandatory minimum of 5 + 25 + 25 = 55 years | Mandatory minimum of 5 + 5 + 5 = 15 years |

For decades, judges have sentenced first time offenders, who possessed a firearm during a drug trafficking crime or a crime of violence, to serve arduous enhanced sentences to be served back-to-back, under 18 U.S.C. § 924(c), in addition to serving a sentence for the underlying drug trafficking crime or crime of violence. This resulted in an average of 50 years sentence for first time offenders under § 924(c)(1)(C). Section 403 of the First Step Act clarified that these enhanced sentences should only apply to defendants who had prior final conviction under 924(c).

However, § 403 specifically provides that it only applies to an offense that was committed before December 21, 2018, if a sentence for the offense has not been imposed as of such date.

Notwithstanding the non-retroactivity of § 403,district courts are now using another provision of the First Step Act, § 603, codified at 18 U.S.C. § 3582(c)(1)(A), to undo the harsh sentences resulting from § 924(c) stacking. Section 603 of the First Step Act amended § 3582(c)(1)(A)(i) to permit the defense to initiate a request for compassionate release based on, among other things, "extraordinary and compelling reasons." This fundamentally altered the compassionate release landscape, which had for more than three decades given BOP unreviewable discretion to file compassionate release motions on behalf of clients. Here are some recent examples of district courts granting motions for compassionate release pursuant to § 3582(c)(1)(A) to alleviate the harsh consequences of § 924(c) stacking:

- *United States v. Yvette Wade*, No. 2:99-cr-257, 2020 WL 1864906, *8 (C.D. Cal. Apr. 13, 2020), Dkt. 637 granting defendant's motion for compassionate release and reducing sentencing of 73 years and 1 month imposed in 1999 to "TIME SERVED, followed by three years of supervised release"); *id.* *4-5 (collecting cases concluding that district courts, in the absence of in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in USSG § 1B1.13] warrant sentence modification); *id.* *6 (collecting cases where other district courts have held that drastic reductions in section 924(c) stacking under

the First Step Act, along with other circumstances, may warrant a reduction of a defendant's sentence).

- *United States v. McPherson*, No. 3:94-cr-05708-RJB, 2020 WL 1862596, *5 (W.D. Wa. Apr. 14, 2020), Dkt. 209 (granting defendant's motion for compassionate release and reducing sentence of 32.6 years imposed in 1995 to time served); *id.* ("In considering the government's argument–that the non-retroactivity law in the First Step Act purposely left this defendant's sentence in place - we need to look at all the laws, including 18 U.S.C. § 3582(c)(1)(A), together. Section 3582 (c)(1)(A) provides a safety valve against what otherwise would be a harsh, unjust, and unfair result stemming from a non-retroactivity clause."). The court's order has an excellent discussion of how and why the Sentencing Commission's Policy Statement in USSG § 1B1.13 (addressing factors court's should consider as "extraordinary and compelling reasons" to support compassionate release) does not limit the court's ability for finding extraordinary and compelling reasons for a sentencing reduction, leaving it to the Court to determine what qualifies, after appropriate analysis." *Id.* *4.

In effect, Section 403 of the First Step Act should dictate a 7 + 7 = 14 years mandatory sentences (for Counts 5s and 8s), for a total sentence of 14 years.

The extraordinary length of Hopkins' sentence is also an important consideration in assessing his present circumstances. Hopkins received a total sentence of 544 months—more than 45 years—largely because of the consecutive sentences imposed under 18 U.S.C. § 924(c). As a result of that statutory sentencing structure, the firearm-related counts substantially increased the aggregate length of his imprisonment beyond the terms imposed on the underlying offenses. The resulting

sentence was exceptionally lengthy in relation to Hopkins' age at the time of the offenses and has required him to spend the overwhelming portion of his adult life in federal custody. Thus, when considered alongside the significant passage of time, his sustained rehabilitation, positive institutional record, and demonstrated change in circumstances, the unusually long sentence contributes to the extraordinary and compelling nature of the circumstances presented to the Court.

### D. Hopkins Has Developed a Viable Release Plan

Compassionate release is most effective when accompanied by a realistic and structured plan for successful reentry into the community. Hopkins has used his years of incarceration not only to rehabilitate himself, but also to prepare for a productive and law-abiding future.

Upon release, Hopkins intends to reside with his mother, Cheryl Hopkins ("Cheryl"), at her home located at 2233 N. Rockford Avenue, Tulsa, Oklahoma 74106. See Exhibit 3. Hopkins will also have the support of his father, Stanley Battle ("Battle"), who owns and operates Too Kool Towing and Lawn Services and is willing to provide Hopkins with employment upon his release. *Id*. In addition to this employment opportunity, Hopkins plans to obtain his Class A Commercial Driver's License ("CDL") and pursue a career in over-the-road ("OTR") trucking. After obtaining his CDL, Hopkins has been offered the opportunity to begin working as

part of a driving team, allowing him to gain the necessary experience and establish himself in the trucking industry. Hopkins' parents are strong support during his transition back into the community. Cheryl's residence will provide a structured and accountable environment while Hopkins continues his adjustment under the supervision of the United States Probation Office. In addition, Hopkins's educational programming, vocational development, and institutional work history have equipped him with skills that will assist him in obtaining lawful employment. Throughout his incarceration, Hopkins has demonstrated reliability, responsibility, and a willingness to work. These qualities position him to become a productive member of society rather than a burden upon it.

The existence of a viable release plan further reduces any concern regarding recidivism or danger to the community. Hopkins will not be released into instability or uncertainty. Instead, he will return to a structured environment with family support, medical care, supervision, and a commitment to lawful employment and productive citizenship.

Finally, the letters in support of Hopkins' compassionate-release motion provide independent, firsthand accounts of his character, personal growth, work ethic, and readiness for reintegration. *Id.* One letter, from M. McCullough, a Health Services Administrator at FCI Leavenworth who had known Hopkins for more than

three and a half years, describes observing a meaningful improvement in Hopkins' character, sense of responsibility, and commitment to positive change. McCullough identifies Hopkins' integrity, empathy, perseverance, respect for others, and strong work ethic, and states that Hopkins has demonstrated a willingness to learn from his past mistakes and is ready to take the next step toward reintegration.

A second letter, written by Nurse Troll, who supervised Hopkins at a clinic where he worked for approximately two years, likewise describes Hopkins as a reliable, trustworthy, and diligent member of the workplace. *Id.* Nurse Troll explains that Hopkins consistently demonstrated a willingness to learn, handled responsibilities with care and professionalism, treated staff and patients respectfully, and responded constructively to feedback. *Id.* Nurse Troll further notes Hopkins' increased confidence, accountability, and interpersonal skills over time, emphasizing that he consistently arrived on time, completed his assignments, and took initiative when necessary. Based on this firsthand experience, the writer states that Hopkins has earned his trust and would be recommended for employment or other opportunities supporting his continued growth and reintegration.

Taken together, the letters provide concrete, firsthand evidence of Hopkins' rehabilitation and present character. Rather than relying solely on Hopkins' own statements regarding his personal growth, the letters corroborate that individuals who

have observed him over extended periods have seen increased accountability, reliability, professionalism, respect for others, and a sustained commitment to positive change. They further demonstrate that Hopkins has developed relationships with individuals who are prepared to support his continued growth and successful reintegration into the community.

These considerations further support the conclusion that compassionate release is consistent with both public safety and the objectives of 18 U.S.C. § 3553(a).

For all of these reasons, the factors set forth in 18 U.S.C. § 3553(a) strongly favor a reduction of sentence and support the exercise of this Court's discretion under 18 U.S.C. § 3582(c)(1)(A).

## VI. CONCLUSION

Compassionate release remains an extraordinary remedy reserved for extraordinary cases. Hopkins respectfully submits that his case is one of them.

This motion does not ask the Court to revisit the validity of Hopkins' conviction, relitigate issues previously decided, or circumvent the limitations governing collateral review. Nor does Hopkins seeks relief based solely upon a change in law or a sentencing disparity. Rather, Hopkins asks this Court to evaluate the person he is today.

The record demonstrates that Hopkins suffers from lenghty sentence. It further

demonstrates years of meaningful rehabilitation, educational achievement, substance-abuse treatment, institutional employment, personal growth, and positive adjustment to incarceration. The evidence before the Court establishes that Hopkins has accepted responsibility for his conduct, used his incarceration productively, and worked diligently to prepare himself for a law-abiding future.

Hopkins has now served a substantial term of imprisonment. The goals of punishment, deterrence, protection of the public, and respect for the law have been achieved. Continued incarceration is not necessary to protect the community, nor is it necessary to accomplish the purposes of sentencing. To the contrary, requiring Hopkins to continue serving the remainder of his sentence despite his demonstrated rehabilitation, and reduced risk of recidivism would result in a sentence that is greater than necessary to satisfy the objectives of 18 U.S.C. § 3553(a).

Federal sentencing is intended to punish wrongdoing, but it is also intended to recognize genuine transformation when it occurs. The compassionate-release statute reflects Congress' judgment that, in rare and compelling cases, mercy and justice may ultimately point in the same direction. Hopkins respectfully submits that this is such a case.

After considering the totality of the circumstances, including Hopkins' rehabilitation, institutional record, sentencing history, and the applicable factors

under 18 U.S.C. § 3553(a), this Court should exercise its discretion under 18 U.S.C. § 3582(c)(1)(A) and impose reduced sentence as the Court deems just and appropriate, followed by the previously imposed term of supervised release and any additional conditions deemed necessary to protect the public and facilitate Hopkins' successful reentry into society.

WHEREFORE, Defendant Deandre Antonio Hopkins, respectfully requests that this Court grant his Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), resentence him to time served or reduce his sentence accordingly to such further relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 26, 2026

Deandre Hopkins

DEANDRE ANTONIO HOPKINS
REG. NO. 27453-064
FCI LEAVENWORTH
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
LEAVENWORTH, KS 66048
Appearing *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I mailed a true and correct copy of the above and foregoing Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018 was sent via U.S. Mail, postage prepaid, to Leena Alam, Assistant U.S. Attorney, Office of the U.S. Attorney (Tulsa), 110 W. 7th St., Ste. 300, Tulsa, OK 74119-1013.

Deandre Hopkins

DEANDRE ANTONIO HOPKINS

**EXHIBIT 1:**
**"Administrative Remedy"**

BP-A0148
JUNE 10

# INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| TO: (Name and Title of Staff Member) Warden Johnston | DATE: July 10th, 2026 |
| FROM: Deandre Hopkins | REGISTER NO.: 27453-064 |
| WORK ASSIGNMENT: Medical | UNIT: A-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

FORMALLY REQUESTING THE WARDEN'S RECOMMENDATION FOR COMPASSIONATE RELEASE PURSUANT TO B.O.P. P.S., 5050.50/Compassionate release procedures.

This is a formal request to the Warden Johnston at the FCI Leavenworth for a recommendation for Compassionate Release pursuant to BOP P.S. 5050.50. It is requested that you inform the Office of BOP General Counsel that I be granted compassionate release due to "extraordinary and compelling" reasons. Mr. Hopkins, has hypertension, severe allergy conditions which help warrant in conjunction with major rehabilitation over the last 15 years qualifying for compassionate release. My incurred federal sentence

(Do not write below this line)

DISPOSITION:

| | |
|---|---|
| Signature Staff Member | Date |

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

SECTION 6

convictions for 924(c)(1)(A)(ii) has changed due to the implementation of the First Step Act of 2018. With the change of the statute pursuant to 924(c)(1)(C) enhancements my sentence is considered illegal, whereas, I could not receive 25 years for the second 924(c)(1)(A) conviction. With the change of law I would only receive 84 months for each of the two convictions. Instead of the 32 years for the two convictions I'd receive 14 years.

With the U.S. Sentencing Commission revisiting § 3582(c)(1)(A) which is the statute for compassionate release, they modified what is now considered "extraordinary and compelling reasons, placing "UNUSUALLY LONG SENTENCES,"into the Sentencing Guidelines pursuant to 1B1.13(B)(6). To include disparity as another consideration in conjunction with rehabilitation, medical, and family issues. If I am released or receive such a sentence reduction I have a home plan and job plan to return to. I have full family support along with the community support of those individuals who have fully supported me through these difficult years of incarceration. The foregoing reasons should be taken into consideration in performing an evaluation whether to recommend me for compassionate release.

**RESPONSE TO INMATE REQUEST TO STAFF MEMBER**
**(COP-OUT)**

**Inmate's Name: Hopkins, Deandre A.**
**Reg. No.: 27453-064**
**Unit: GP 1**
**Cell: A03-213U**

This is in response to Inmate Request to Staff, in which you request consideration for a Compassionate Release/Reduction in Sentence (RIS) in accordance with Program Statement 5050.50. Specifically, you are requesting consideration due to medical issues and an "unusually long sentence".

In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. 3582(c)(1)(A) and 4205 (g), an inmate may initiate a request for consideration only when there are particularly extraordinary or compelling circumstances. The circumstances the Bureau of Prisons considers are under the following criteria:

- Debilitated Medical Condition
- Non-Medical Circumstances-Elderly Inmates
- Elderly Inmates with Medical Conditions
- Death or Incapacitation of the Family Member Caregiver
- Incapacitation of a Spouse or Registered Partner

As you do not have an extraordinary or compelling circumstance for your request, and it does not fall under the jurisdiction of the Bureau of Prisons, you are not qualified. Therefore, your request for a Compassionate Release/RIS is hereby denied.

If you are dissatisfied with this response, you may appeal the decision through the Administrative Remedy process.

J. Johnston, Warden

8·19·2026
Date

**RESPONSE TO INMATE REQUEST TO STAFF**
**INMATE: NEAL, Byron**
**REGISTER NO: 30456-034**
**INSTITUTION: FCC Oakdale (FCI I)**
**UNIT: Vernon**

This is in response to your Inmate Request to Staff received on August 3, 2026, at the Federal Correctional Complex (FCC) in Oakdale, Louisiana, in which you request a Compassionate Release/Reduction in Sentence (RIS).

Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), Section 2, Page 3, *Initiation of Request - Extraordinary or Compelling Circumstances*, outlines the following criteria for consideration for an RIS: An inmate may initiate a request for consideration only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the Court at the time of sentencing. According to your medical records, you have not been diagnosed with a terminal, incurable disease with a life expectancy of eighteen months or less. Although you do suffer from medical conditions, the Bureau of Prisons (BOP) can provide conventional treatment to manage your medical needs. As such, your request for a Compassionate Release/RIS is denied at this time.

If you are not satisfied with this response, you may commence an appeal of this decision via the Administrative Remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

C. Humphrey Complex Warden
FCC Oakdale

8/21/2026
Date

**EXHIBIT 2:**

**"Individualized Needs Plan - Program Review"**

**"Certification of Achievements"**

# Individualized Needs Plan - Program Review (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: HOPKINS, DEANDRE A 27453-064

SEQUENCE: 01748465

Team Date: 02-26-2026

| | | | |
|---|---|---|---|
| Facility: | LVN LEAVENWORTH FCI | Proj. Rel. Date: | 01-30-2043 |
| Name: | HOPKINS, DEANDRE A | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 27453-064 | DNA Status: | POL04040 / 11-12-2013 |
| Age: | 36 | | |
| Date of Birth: | 01-30-1990 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Pending Charges

Refer to PSI/Records Office for additional information on all Pending/Unknown charges.

## Inmate Photo ID Status

Full status incomplete - Expiration: null

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | HLTH SVC | HOSPITAL WORKER | 10-04-2024 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LVN | ESL HAS | ENGLISH PROFICIENT | 07-29-2013 |
| LVN | GED EN | ENROLL GED NON-PROMOTABLE | 07-29-2013 |
| LVN | GED SAT | GED PROGRESS SATISFACTORY | 05-05-2014 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LVN | | GED: BARTS 1400-1530 ROOM 1 | 01-26-2026 | CURRENT |
| LVN | W | GED: JENSEN 1400-1530 ROOM 4 | 09-16-2024 | 01-26-2026 |
| FLP | W | GED YELLOW 1 MS. TOELLE RM 118 | 04-11-2024 | 08-09-2024 |
| FLP | C | THE PLANET OF JUPITER | 07-03-2024 | 07-10-2024 |
| FLP | W | GED CLASS 7:30-9:00 ROOM 118 | 01-18-2024 | 04-11-2024 |
| FLP | W | GED CLASS 7:30-9:00 ROOM 114 | 02-01-2023 | 01-18-2024 |
| FLP | W | GED 9:00 TO 11:00AM ROOM 114 | 03-28-2019 | 02-01-2023 |
| FLP | C | ACE DECIMALS CLASS | 04-01-2020 | 04-08-2020 |
| FLP | C | BEGINNING LEATHER | 08-11-2019 | 10-18-2019 |
| YAP | W | PGED M-F 11:30-1 PM; MARTIN | 10-22-2018 | 12-18-2018 |
| YAP | W | PGED M-F 8-10 AM; MARTIN | 08-01-2018 | 10-22-2018 |
| LEW SMU | W | PGED IN-CELL STUDY/SPECIAL MGT | 09-13-2017 | 06-18-2018 |
| LEW SMU | C | SMU PERSONAL GROWTH II RPP 6 | 11-21-2017 | 01-03-2018 |
| LEW SMU | C | SMU PERSONAL GROWTH I RPP 6 | 09-06-2017 | 11-21-2017 |
| HAZ | C | USP INTRO TO STICK ART PROGRAM | 02-08-2016 | 03-28-2016 |
| POL | W | GED SHU SCHOOL | 03-03-2015 | 03-05-2015 |
| POL | W | PRE GED SHU SCHOOL | 11-05-2014 | 03-03-2015 |
| POL | W | AM GED 7 | 02-28-2014 | 11-05-2014 |
| POL | C | ACE LGL RESCH CLASS | 07-21-2014 | 10-20-2014 |
| POL | C | DRUG EDUCATION | 01-29-2014 | 03-13-2014 |
| POL | W | AM PGED 4 U | 11-05-2013 | 02-28-2014 |
| POL | W | PM PGED 4 U | 08-28-2013 | 11-05-2013 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| *** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS *** | |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 08-01-2013 |
| CARE1-MH | CARE1-MENTAL HEALTH | 08-06-2013 |

# Individualized Needs Plan - Program Review (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: HOPKINS, DEANDRE A 27453-064

SEQUENCE: 01748465
Team Date: 02-26-2026

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 07-30-2013 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 08-01-2013 |
| YES F/S | CLEARED FOR FOOD SERVICE | 07-29-2013 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 03-13-2014 |
| MAT DECL | MED ASSIST TRMT DECLINE | 03-11-2025 |
| NR WAIT | NRES DRUG TMT WAITING | 07-26-2021 |

## FRP Payment Plan

Most Recent Payment Plan

**FRP Assignment:** PART FINANC RESP-PARTICIPATES **Start: 12-17-2025**

Inmate Decision: **AGREED** **$75.00** Frequency: **MONTHLY**

Payments past 6 months: **$300.00** Obligation Balance: **$172,880.23**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | ($25.00) | IMMEDIATE | EXPIRED |
| | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | | |
| 3 | ASSMT | $500.00 | $200.00 | IMMEDIATE | EXPIRED |
| | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | | |
| 2 | REST FV | $7,103.00 | $5,403.53 | IMMEDIATE | AGREED |

| Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|
| | 02-12-2026 | LVN | PAYMENT | INSIDE PMT | $75.00 |
| | 01-13-2026 | LVN | PAYMENT | INSIDE PMT | $75.00 |
| | 11-13-2025 | LVN | PAYMENT | INSIDE PMT | $75.00 |
| | 10-09-2025 | LVN | PAYMENT | INSIDE PMT | $75.00 |

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 4 | REST FV | $167,476.70 | $167,476.70 | IMMEDIATE | AGREED |
| | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | | |

## FRP Deposits

Trust Fund Deposits - Past 6 months: $ N/A Payments commensurate ? N/A

New Payment Plan: ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 11-15-2023 |
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 10-31-2019 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 02-26-2026 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 02-26-2026 |
| N-COGNTV N | NEED - COGNITIONS NO | 02-26-2026 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC Y | NEED - EDUCATION YES | 02-26-2026 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 02-26-2026 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 02-26-2026 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-26-2026 |
| N-MEDICL N | NEED - MEDICAL NO | 02-26-2026 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 02-26-2026 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 02-26-2026 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-26-2026 |
| N-WORK Y | NEED - WORK YES | 02-26-2026 |
| R-MED | MEDIUM RISK RECIDIVISM LEVEL | 02-26-2026 |

## Progress since last review

# Individualized Needs Plan - Program Review (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: HOPKINS, DEANDRE A 27453-064

SEQUENCE: 01748465

Team Date: 02-26-2026

Hopkins is assigned to work in the Hospital. He is currently participating in GED class. He has maintained clear conduct and is participating in FRP.

## Next Program Review Goals

Maintain work assignment and clear conduct.

## Long Term Goals

Complete GED. Complete at least one FSA, RPP, or ACE course by 1 year (i.e., Drug Education, Smart Money, vocational courses offered through Education).

## RRC/HC Placement

No.
Management decision - Will be reviewed 17-19 months prior to release. (17-19 months or less, second chance act).
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources : Job Search, Transportation, Clothing, DL, Housing, Drug/Alcohol, Medical, Education, Mental Health.
- Offense : See file.
- Prisoner : See file.
- Court Statement : Details are contained in J&C Order, Have been reviewed.
- Sentencing Commission : He was sentenced according to relevant Policy.

Refer to PSI/Records Office for additional information on all Pending/Unknown charges. RRC Will evaluate 17-19m prior to PRD
Individually assessed.

## Comments

Next Team: 8-2026
Points: 22 Medium
Next Points: 6-2026
See your case manager or counselor during open house for any questions.
Will be reviewed for RRC placement 17-19 months prior to release date per the 2nd Chance Act.

# CERTIFICATE *Of* COMPLETION

## HOPKINS, DEANDRE #27453-064

Successfully completed

**ACE INVESTMENTS**

PRESENTED BY: [signature]

ON THIS DAY: 06/18/2026

# CERTIFICATE *Of* COMPLETION

## HOPKINS, DEANDRE #27453-064

Successfully completed

**ACE UNDERSTANDING YOUR CREDIT**

PRESENTED BY:

ON THIS DAY: 06/18/2026

# CERTIFICATE OF COMPLETION

THIS ACKNOWLEDGES THAT

***Deandre Hopkins***

HAS SUCCESSFULLY COMPLETED THE

*Houses of Healing*

DEPARTMENT OF JUSTICE · FEDERAL BUREAU OF PRISONS

7/14/25

# CERTIFICATE OF COMPLETION

AWARDED TO

## Deandre Hopkins 27453-064

for successful completion of

## First Step Act: Traumatic Stress & Resilience

at FCI Leavenworth

September 11, 2025

Edward D Emerson M.A, MFT
Specialty Treatment Clinical Therapist
FCI Leavenworth Psychology Department

# CERTIFICATE OF COMPLETION

AWARDED TO

## Deandre Hopkins 27453-064

for successful completion of

## First Step Act: Basic Cognitive Skills

at FCI Leavenworth

September 12, 2025

Edward D Emerson M.A, MFT
Specialty Treatment Clinical Therapist
FCI Leavenworth Psychology Department

# CERTIFICATE OF COMPLETION

AWARDED TO

## Deandre Hopkins 27453-064

for successful completion of

## First Step Act: Criminal Thinking

at FCI Leavenworth

September 17, 2025

Edward D Emerson M.A, MFT
Specialty Treatment Clinical Therapist
FCI Leavenworth Psychology Department

# Certificate of Completion

USP

Pollock, Louisiana

Deandre Hopkins

Reg#: 27453-064

has successfully completed

Freedom from Drugs

Drug Abuse Education

February 19, 2014

C. Gaspard, MS
Drug Treatment Specialist

L. Hess, PsyD
Drug Abuse Program Coordinator

# USP HAZELTON

THIS CERTIFIES THAT

## Deandre Hopkins

Successfully completed the 16 hours of course study in

**Construction & Home Improvement**

and is therefore awarded this

## CERTIFICATION OF COMPLETEION

Given this 13th day of May, 2016

Unit Manager

Counselor

# Certificate of Achievement

This is to certify that

## Deandre Hopkins

has completed the necessary course work for

**ACE**

**Legal Research**

and is entitled to the benefits it incurs.

Awarded this the 6th day of October, 2014,

D. Clendenin, ACE Coordinator

**EXHIBIT 3:**
**"Release Plans"**
**"Letters in Support of Motion for Compassionate Release"**

Release Plans for Deandre Hopkins

Upon release, I am going to live with my mother, Cheryl Hopkins, of Tulsa,Ok whom has offered me a place to stay until I can get my own place to stay. My mother lives at 2233 N. Rockford Ave., 74106, (918)515-0092.

I have been offered a job with my father, Stanley Battle who owns and operates Too Kool Towing and Lawn Services.

I will be going to Truck Driving Training to obtain my Class A CDL's so that I may persue a career in OTR. After obtaining my CDL's I have been offered to start on a team to get my driving experience.

M. McCullough, Health Services Administrator

Federal Correctional Institution Leavenworth

(913) 682-8700

m2mccullough@bop.gov

To whom it may concern,

I am writing to express my support for Deandre Hopkins, whom I have known for over three and a half years. Over the course of our work relationship, I have witnessed growth in his character, sense of responsibility, and commitment to positive change.

I have observed Mr. Hopkins demonstrate qualities such as integrity, empathy, perseverance, and a strong work ethic. He has consistently shown respect toward others and a willingness to learn from past mistakes. I believe these traits will serve him well in becoming a productive and responsible member of the community.

It is my sincere belief that Mr. Hopkins is ready to take the next step toward reintegration.

I fully support his application for compassionate release and trust that he will continue and uphold the values and discipline developed during this period of personal growth.

Thank you for considering my recommendation. Please feel free to contact me at the phone number and email address stated above if you require further information.

Respectfully,

M. McCullough, HSA

To Whom It May Concern:

This letter is written with my strong recommmendation for Deandre Hopkins, who has worked at my clinic for the past two years. I have had the opportunity to observe his work ethics, character, and more importantly his personal growth on a consistent basis.

From the outset Deandre, demonstrated a willingness to learn and a full commitment to contribute positively to the clinic environment. He quickly became a reliable and trustworthy member of our team, then handling many responsibilities with care and professionalism. Whether assisting with daily operations, maintaining cleanliness and organization, or supporting staff and patients, he has approached every assigned task with diligence and respect.

What stands out most is his attitude and growth. Over the last two years, I have seen Deandre develop greater confidence, accountability, and interpersonal skills. He has consistently shown respect toward staff and patients alike, and he responds well to feedback, using it as an opportunity to improve rather than as criticism.

IMportantly, Deandre has proven dependable. He reports to work on time, complete tasks thoroughly, and takes initiative when necessary. These qualities are essential in any workplace, and he demonstrated them consistently over an extended period.

Based on my experience working with Deandre, I believe he is capable of being a productive, responsible and positive member of the community. He has earned my trust, and I would not hesitate to recommend him for employment or other opportunities that support his continued growth and reintegration.

If you have any questions or would like additional information, please feel free to contact me.

Sincerely,

Registered Nurse Troll

DEANDRE ANTONIO HOPKINS
REG. NO. 27453-064
FCI LEAVENWORTH
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
LEAVENWORTH, KS 66048

October 26, 2026

Ms. Bonnie N. Hackler
Acting Clerk of Court
U.S. District Court
Northern District of Oklahoma
Tulsa Division
333 W. 4th Street, Room 411
Tulsa, OK 74103

RE: *Hopkins v. United States*
Case No. 4:12-cr-00050-JDR-3

Dear Ms. Hackler:

Enclosed please find and accept for filing Movant's Motion for Compassionate Release in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) and the First Step Act of 2018. Please submit this document to the Court.

Thank you for your assistance in this matter.

Sincerely,

Deandre Hopkins

DEANDRE ANTONIO HOPKINS
Appearing *Pro Se*

*Encl. as noted*

PRESS FIRMLY TO SEAL

FSC MIX Board FSC® C106260

PAPER POUCH how2recycle.info

PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PM
HOUSTON, TX 77070
OCT 28, 2026
74103
$13.90
RDC 01 0 Lb 9.40 Oz S2324K502841-77

UNITED STATES POSTAL SERVICE®

PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

FLAT RATE EN

ONE RATE ■ ANY WEIGHT

TRACKED ■ INSU

EXPECTED DELIVERY DAY: 10/30/26

USPS TRACKING® #

9505 5104 4804 6301 3303 95

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH how2recycle.info

FROM:

postmark 10/28/26

12-cr-50-JDR-3

DEANDRE ANTONIO HOPKINS
REG. NO. 27453-064
FCI LEAVENWORTH
FEDERAL CORR. INSTITUTION
P.O. BOX 1000
LEAVENWORTH, KS 66048

TO:

Ms. Bonnie N. Hackler, Clerk
U.S. District Court
Northern District of Oklahoma
Tulsa Division
333 W. 4th Street, Room 411
Tulsa, OK 74103

RECEIVED
NOV 02 2026
Bonnie N. Hackler, [illegible]
U.S. DISTRICT COURT

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail Intern[illegible]
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.